# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

CONSOLIDATED GOVERNMENT OF
COLUMBUS, GEORGIA,

       *Plaintiff,*

    v.

NORFOLK SOUTHERN CORPORATION, *et al.*,

       *Defendants.*

Case No. 4:25-cv-312-CDL

**DEFENDANTS NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, CENTRAL OF GEORGIA RAILROAD COMPANY, AND THE SOUTH WESTERN RAIL ROAD COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

J. STEVEN STEWART
Georgia Bar No. 681550
Hall, Bloch, Garland & Meyer, LLP
Post Office Box 5088
Macon, Georgia 31208-5088
(478) 745-1625
stevestewart@hbgm.com

TOBIAS S. LOSS-EATON
  *Lead Counsel*
(*pro hac vice*)
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
(202) 376-8427
tlosseaton@sidley.com

*Counsel for Defendants Norfolk Southern Corporation, Norfolk Southern Railway Company, Central of Georgia Railroad Company, and The South Western Rail Road Company*

## CONTENTS

Table of authorities ......................................................................................................... ii

Introduction ...................................................................................................................... 1

Background ....................................................................................................................... 2

I.    Factual background. .............................................................................................. 2

II.    Procedural background. ........................................................................................ 4

Argument .......................................................................................................................... 4

I.    ICCTA completely preempts Columbus's claims, transforming them into federal claims. ................................................................................................................... 4

    A.    ICCTA creates exclusive federal causes of action for attempts to divest railroads of land used for rail operations. ................................................... 5

        1.    ICCTA preempts claims that would take railroad property for a conflicting use. ................................................................................ 5

        2.    ICCTA creates exclusive federal causes of action. .................................. 12

    B.    Columbus's claims fall within the scope of ICCTA's exclusive causes of action. ............................................................................................................. 13

II.    Columbus's claims should be dismissed under Rule 12(b)(6). ........................................... 14

Conclusion ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*14500 Limited v. CSX Transp.*,
   No. 1:12-cv-1810, 2013 WL 1088409 (N.D. Ohio Mar. 14, 2013)...........................................8

*Arkansas State Highway Comm'n v. Union Pac. R.R.*,
   No. 06-2010, 2007 WL 9723788 (W.D. Ark. Mar. 27, 2007).................................................8

*B & S Holdings, LLC v. BNSF Ry. Co.*,
   889 F. Supp. 2d 1252 (E.D. Wash. 2012) .........................................................................8

*Barclay v. United States*,
   443 F.3d 1368 (Fed. Cir. 2006).................................................................................6, 7

*Cedarapids, Inc. v. Chicago, Cent. & Pac. R. Co.*,
   265 F. Supp. 2d 1005 (N.D. Iowa 2003)......................................................................7, 11

*Elam v. Kansas City S. Ry.*,
   635 F.3d 796 (5th Cir. 2011) ...................................................................................14

*Ervast v. Flexible Prods. Co.*,
   346 F.3d 1007 (11th Cir. 2003) ..................................................................................5

*Hartwell R.R. v. Hartwell First United Methodist Church, Inc.*,
   894 S.E.2d 481 (Ga. App. 2023)................................................................................11

*McCloud-Pue v. Atlanta Beltline Inc.*,
   874 S.E.2d 482 (Ga. App. 2022)..............................................................................6, 7

*Ne. La. R.R. Dev. Dist. v. Delta S. R.R.*,
   No. 3:23-1783, 2024 WL 2926596 (W.D. La. May 24, 2024) ...........................................8, 11

*Norfolk S. Ry. v. Dille Rd. Recycling, LLC*,
   94 F.4th 517 (6th Cir. 2024) .....................................................................................6

*PCI Transp., Inc. v. Fort Worth & Western R.R.*,
   418 F.3d 535 (5th Cir. 2005) ...................................................................................12

*Pejepscot Indus. Park v. Me. Cent. R.R.*,
   215 F.3d 195 (1st Cir. 2000)...................................................................................13

*Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*,
   No. 21-10410, 2023 WL 3454614 (11th Cir. May 15, 2023) (per curiam).................5, 12, 13

*Schleider v. GVDB Operations, LLC*,
   121 F.4th 149 (11th Cir. 2024) ..........................................................................4, 5, 14

*Scioli Turco, Inc. v. Phil. & Reading R.R.*,
    No. 21-563, 2023 WL 7646535 (E.D. Pa. Nov. 14, 2023) ....................................12

*Skidmore v. Norfolk S. Ry.*,
    1 F.4th 206 (4th Cir. 2021) ..................................................................... *passim*

*Thompson v. Tex. Mexican R.R.*,
    328 U.S. 134 (1946) .................................................................................12, 14

*Union Pac. R.R. Co. v. Alameda Cnty. Transportation Comm'n*,
    No. 20-cv-7410-RS, 2021 WL 9898645 (N.D. Cal. Feb. 23, 2021) ......................9

*Union Pac. R.R. v. Chicago Transit Auth.*,
    647 F.3d 675 (7th Cir. 2011) ..............................................................6, 7

**Administrative Decisions**

*Ne. La. Multimodal Dist.—Pet. for Decl. Order.*,
    No. FD 36809, 2025 WL 2651163 (S.T.B. served Sept. 15, 2025) ....................11

*Jie Ao & Xin Zhou—Pet. for Decl. Order*,
    No. FD 35539, 2012 WL 2047726 (S.T.B. served June 6, 2012) .........................6

*Joseph R. Fox—Pet. for Decl. Order*,
    No. FIN 35161, 2009 WL 1383503 (S.T.B. served May 18, 2009) ........................11

*Maine Cent. R.R.—Abandonment Exemption*,
    No. AB-83, 2000 WL 36744028 (S.T.B. served Sept. 14, 2000) .........................12

*Norfolk S. Ry.—Adverse Abandonment*,
    No. AB 290, 2012 WL 1339070 (S.T.B. served Apr. 17, 2012) ..........................13

**Statutes**

28 U.S.C. §§ 1331, 1441 and 1446 .....................................................................4

49 U.S.C. § 10906 ...........................................................................................11

    § 10102(9)(A), 10501(b) ..........................................................................6

    § 10501(b) ..........................................................................................6, 7

    § 10903(d) ..................................................................................6, 12, 15

    § 10906 ..........................................................................................3, 11

    § 11704(b) ..................................................................................12, 13, 14

    § 11704(c) ..........................................................................................12

**Legislative Authority**

H.R. Rep. No. 1 04-311 (1995)...........................................................................5

## INTRODUCTION

The Consolidated Government of Columbus, Georgia brought this case in state court, seeking to eject Norfolk Southern Railway Company from its busy railyard in downtown Columbus.  Columbus says it provided the land for the yard on the condition that it be used for a passenger depot.  Since the property is no longer used for passenger service, Columbus asserts a reversionary interest, claiming that Norfolk Southern's continued use of the rail yard is a trespass and that the railroad should be ejected and enjoined from using the yard.

Federal law prohibits this.  Under the ICC Termination Act (ICCTA), the Surface Transportation Board (STB) has exclusive jurisdiction over the construction, operation, and abandonment of railroad tracks and facilities.  Courts across the country thus hold that a party cannot use state law to deprive an interstate railroad of land that it uses (or may need to use) for railroad operations.  Only the STB has such authority.  And the land at issue here is not just useful for railroad operations, but vital:  The Columbus Yard—almost a mile long, with roughly two dozen tracks—is a critical element of the Norfolk Southern rail network, switching and sorting around 45,000 railcars every year.  The Columbus Yard is also an interchange point with another railroad and the only rail access point to Fort Benning.  A local government cannot seize this key component of the interstate rail network for its own purposes, whatever state law may say.

And such claims are not just defensively preempted; they are *completely* preempted, converting them into federal claims arising under ICCTA.  Norfolk Southern thus removed this case to this Court on federal-question grounds, and now moves to dismiss Columbus's claims under Rule 12(b)(6).

The controlling analysis has four steps, but it boils down to whether ICCTA shows Congress's intent that claims like Columbus's proceed (if at all) in a federal forum.

*First*, does ICCTA exclusively govern and preempt state-law claims—whether framed as reversion, ejectment, condemnation, adverse possession, or otherwise—that would take railroad property for a conflicting use?  Yes, it does:  Courts across the country uniformly hold such claims preempted, both defensively and completely.

*Second*, does ICCTA create an exclusive federal cause of action?  Yes, it does:  ICCTA includes both a general civil cause of action and a specific administrative remedy called "adverse abandonment" for parties that seek to remove land from the national rail network.  Again, courts have relied on these causes of action to recognize complete ICCTA preemption of similar claims.

*Third*, do the plaintiff's claims fall within the scope of the exclusive cause of action?  Yes, they do:  As other courts recognize, it does not matter whether ICCTA actually gives a plaintiff like Columbus an effective remedy; Columbus's claims target facilities within the STB's exclusive authority, so they can be brought (if at all) only under ICCTA.  Indeed, Columbus is trying to attain the results of a successful adverse abandonment claim—but without trying to satisfy the demanding standards for that remedy.

Those three steps establish complete preemption, leaving one more question:  *Fourth*, does the plaintiff state a claim for relief under the preempting statute, *i.e.*, under ICCTA?  No, it does not.  Columbus does not and cannot contend either that Norfolk Southern has violated any provision of ICCTA or that it can satisfy the standards for adverse abandonment, given that Norfolk Southern actively uses this railyard.  Dismissal under Rule 12(b)(6) is thus proper.

## BACKGROUND

### I.    Factual background.

According to the complaint, at multiple times in the late 1800s, various of Norfolk Southern's predecessor railroads requested land from Columbus to build railroad facilities.  Columbus claims that the city conveyed land to the railroads subject to various conditions,

2

allegedly including that the land would revert to the city if (i) the land were no longer used for a passenger depot, (ii) the railroad crossed the Chattahoochee River, or (iii) the railroad charged to store goods on the property. *See* Compl. ¶¶ 18–72. Columbus alleges that, at some point, the railroad crossed the river. It also alleges that Norfolk Southern "charges and receives compensation for storage of goods" on the property. *Id.* ¶¶ 29, 40, 50, 74. And it alleges that Norfolk Southern's "only use for the [property] is for temporary parking of empty train cars, temporary storage of train cars containing goods, and passage of through traffic which neither originates or terminates in Columbus," and that some of the tracks on the property are not "active." *Id.* ¶¶ 31, 42, 52, 76. Columbus thus claims that title to these parcels reverted to the city at some point. *Id.* ¶ 32.[1]

In April 2023, Columbus "issued a demand for possession" to Norfolk Southern, laying out its view of these historical conveyances. *See* Compl. ¶ 80 & Ex. A. Norfolk Southern responded two weeks later, explaining that the "fundamental outcome sought by [Columbus] is the abandonment of [the] rail yard," which is subject to the STB's exclusive jurisdiction under federal law. *See id.* ¶ 81 & Ex. B. Columbus replied in October, asserting that that "the parcels [at issue] are not subject to the STB's jurisdiction because they do not contain main line tracks and constitute only 'spur, industrial, team, switching, or side tracks' which the STB does not have authority over pursuant to 49 U.S.C.A. § 10906." *See* Compl. Ex. C. Norfolk Southern thus responded again in November, explaining that Columbus had misconstrued the scope of federal preemption in this area. *See* Compl. Ex. D. These late-2023 communications were the last Norfolk Southern heard from the city on this topic until this action.

---

[1] Norfolk Southern does not concede any of Columbus's assertions about the legal effects of these conveyances or conditions under state law, but those points are irrelevant to this motion.

## II.    Procedural background.

Columbus began this action on August 28, 2025 by filing a complaint in the Superior Court of Muscogee County.  Columbus named Norfolk Southern Railway and its parent company, Norfolk Southern Corporation, along with its wholly owned subsidiaries, Central of Georgia Railroad Company and The South Western Rail Road Company.  (This brief refers to these four entities together as "Norfolk Southern.")  The complaint also named Genesee & Wyoming Railroad Services, Inc., "a lessee of" Norfolk Southern, and two of its own subsidiaries, Columbus & Chattahoochee Railroad, Inc. and Georgia Southwestern Railroad, Inc.  *See* Compl. ¶¶ 3–9.  The complaint seeks trespass damages, "a permanent injunction against the Railroad from continuing its trespass," ejectment via "a writ of possession," the "monetary value" of the railroad's "benefits of possession and control" of the railyard, nuisance damages, an order abating the "nuisance," and attorney's fees. *Id.* ¶¶ 88–125.

On October 6, 2025, the Defendants jointly and timely removed this action to this Court under 28 U.S.C. §§ 1331, 1441 and 1446.  *See* Doc. 1 (notice of removal).  Norfolk Southern now moves to dismiss.

## ARGUMENT

## I.    ICCTA completely preempts Columbus's claims, transforming them into federal claims.

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed …."  28 U.S.C. § 1441(a).  Federal district courts have original federal-question jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  *Id.* § 1331.

"Federal pre-emption is ordinarily a federal defense to the plaintiff's suit that does not authorize removal to federal court."  *Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 160

(11th Cir. 2024) (cleaned up). *Complete* preemption, however, is a distinct doctrine—"a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Id.* "Complete preemption occurs when a federal statute both preempts state substantive law and provides the exclusive cause of action for the claim asserted." *Id.* at 160 (cleaned up). In other words, a "state-law claim is completely preempted (and thus removable) if (1) a federal statute creates an exclusive cause of action and (2) the state-law claim falls within that exclusive federal cause of action." *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, No. 21-10410, 2023 WL 3454614, at *1 (11th Cir. May 15, 2023) (per curiam). Both requirements are met here.

### A. ICCTA creates exclusive federal causes of action for attempts to divest railroads of land used for rail operations.

First, ICCTA creates exclusive federal causes of action for claims within its broad scope—including state-law claims that seek to deprive a railroad of land that is or may be used for railroad operations. In analyzing this first step of the complete-preemption test, courts often look to ordinary, defensive-preemption cases to inform their analysis. *See Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1014 n.7 (11th Cir. 2003) ("Defensive preemption may not be a prerequisite for complete preemption, but they usually co-exist."); *see, e.g.*, *Skidmore v. Norfolk S. Ry.*, 1 F.4th 206, 213 n.5 (4th Cir. 2021) ("we may rely on ordinary preemption cases" to analyze complete ICCTA preemption). Here, cases applying both ordinary and complete preemption show that ICCTA's scheme is comprehensive and exclusive in this area.

#### 1. ICCTA preempts claims that would take railroad property for a conflicting use.

a. Congress passed ICCTA to ensure "the direct and *complete pre-emption* of State economic regulation of railroads … the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be *completely exclusive*." H.R.

Rep. No. 1 04-311, at 95–96 (1995) (emphasis added).  The statute thus gives the federal Surface Transportation Board (STB) "exclusive jurisdiction" over "transportation by rail carriers . . . with respect to" (among other things) "practices, routes, services, and facilities" as well as "construction, acquisition, operation, abandonment, or discontinuance" of tracks or facilities. 49 U.S.C. § 10501(b).    In this area, the ICCTA's remedies are "exclusive and preempt the remedies provided under Federal or State law." *Id.* § 10501(b).  "It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *Norfolk S. Ry. v. Dille Rd. Recycling, LLC*, 94 F.4th 517, 523 (6th Cir. 2024) (brackets omitted).

ICCTA's preemptive sweep includes any "property [or] facility . . . of any kind related to the movement of passengers or property, or both, by rail."  49 U.S.C. § 10102(9)(A), 10501(b). The statute thus covers "railroad property or facilities," *see Union Pac. R.R. v. Chicago Transit Auth.*, 647 F.3d 675, 679 n.2 (7th Cir. 2011) (citation omitted), which are deemed "part of the national rail system," *Jie Ao & Xin Zhou—Pet. for Decl. Order*, No. FD 35539, 2012 WL 2047726, at *2 (S.T.B. served June 6, 2012); *see also McCloud-Pue v. Atlanta Beltline Inc.*, 874 S.E.2d 482, 486 (Ga. App. 2022) (noting that, under Supreme Court precedent, "we must assume that the entire portion of a railway right-of-way is necessary for railway operations").

Under this scheme, a rail carrier cannot "abandon any part of its railroad lines" unless the STB "finds that the present or future public convenience and necessity" are satisfied.  49 U.S.C. § 10903(d).  Thus, "[w]hile state law generally creates the property interest in a railroad right-of-way, the disposition of reversionary interests is subject to the STB's exclusive and plenary jurisdiction to regulate abandonments." *Barclay v. United States*, 443 F.3d 1368, 1374 (Fed. Cir.

2006) (cleaned up).  In turn, "railway property remains subject to the STB's jurisdiction" until properly abandoned.  *See id.* (cleaned up).

Applying these principles, courts and the STB have repeatedly held that ICCTA preempts—defensively or completely—state property claims that would divest a railroad of property used for rail operations.  After all, the touchstone of ICCTA preemption is "regulation," 49 U.S.C. § 10501(b), meaning "controlling by rule or restriction," *Union Pacific*, 647 F.3d at 679 n.2.  And using state law to take "railroad property or facilities for another use that would conflict with the rail use is exercising control—the most extreme type of control—over rail transportation as it is defined in" the ICCTA.  *Id.* (citation omitted).  Indeed, "allowing landowners to carve off strips of railroad [property] … for non-rail use would impermissibly interfere with the operations of railroads across Georgia" and the nation.  *McCloud-Pue*, 874 S.E.2d at 486 (internal quotation marks omitted).  ICCTA thus "preempts any application of state law claims that would take rail property for another, conflicting use."  *Skidmore*, 1 F.4th at 213 (cleaned up).

For example, the Fourth Circuit in *Skidmore* affirmed the removal, on complete-preemption grounds, of state quiet-title claims alleging adverse possession and prescriptive easement against part of a rail corridor.  *See* 1 F.4th at 214–15.  Applying STB precedent, the court explained that "the application of adverse possession to [a railroad right-of-way] would amount to regulation of rail transportation because it would confer exclusive control to the [plaintiff] over property that is part of the national rail network."  *Id.* at 213 (quoting *Jie Ao*, 2012 WL 2047726, at *2).

Likewise, several district courts have allowed railroads to remove state-law claims that sought to eject a railroad from land it was using (or may need to use) for rail operations:

- *Cedarapids, Inc. v. Chicago, Cent. & Pac. R. Co.*, 265 F. Supp. 2d 1005, 1013, 1015 (N.D. Iowa 2003):  Because "Congress intended for the abandonment of all types of tracks to be under the STB's jurisdiction," plaintiff's asserted reversionary-interest claims were "properly removed … under the complete preemption doctrine."

- *Ne. Louisiana R.R. Dev. Dist. v. Delta S. R.R.*, No. 3:23-1783, 2024 WL 2926596, at *2, *4 (W.D. La. May 24, 2024), *R&R adopted*, 2024 WL 2923001 (June 10, 2024):  "ICCTA completely preempts state law concerning matters enumerated in § 10501(b)(2)," including government body's attempt to expropriate previously-abandoned track that is now "used for storage and staging of cars."

- *B & S Holdings, LLC v. BNSF Ry. Co.*, 889 F. Supp. 2d 1252, 1258 (E.D. Wash. 2012): "[T]he Court finds that the ICCTA completely preempts this state law adverse possession cause of action because not only would it interfere with railroad operations, but would divest the railroad of the very property with which it conducts its operations."

- *14500 Limited v. CSX Transp.*, No. 1:12-cv-1810, 2013 WL 1088409, at *1 (N.D. Ohio Mar. 14, 2013):  ICCTA completely preempted adverse-possession and prescriptive-easement claims aimed at an unused portion of a railyard because "the property in question [was] needed to potentially accommodate future needs."

- *Arkansas State Highway Comm'n v. Union Pac. R.R.*, No. 06-2010, 2007 WL 9723788, at *2 (W.D. Ark. Mar. 27, 2007):  Railroad properly removed condemnation claims because "a taking which would prevent or unduly interfere with railroad operations and interstate commerce would be preempted by ICCTA."

The same result applies here.  Columbus seeks to eject Norfolk Southern from four parcels of land that make up almost the entire Columbus railyard:



*See* Plum Decl. Ex. A (Doc. 1-5). These claims, if successful, "would remove the land at issue from the national railway system and deprive [the railroad] of the ability to use the land to support its rail transportation operations." *Skidmore*, 1 F.4th at 214.

No more is required to trigger preemption. Indeed, many of the cases noted above upheld complete preemption even though the railroad was not currently using the land at issue, but might need it in future. Here, Columbus seeks to eject Norfolk Southern from an entire *currently operating* railyard. *See Union Pac. R.R. Co. v. Alameda Cnty. Transportation Comm'n*, No. 20-cv-7410-RS, 2021 WL 9898645, at *3 (N.D. Cal. Feb. 23, 2021) (ICCTA preempted local government's condemnation, which sought "to demolish at least part of a warehouse used for transloading operations, to relocate part of Union Pacific's rail lines, and to remove track and portions of the rail yard used for spotting, switching, and storage of railcars").

And the property Columbus seeks to take is a key part of Norfolk Southern's system. As Mr. Plum explains: "The Columbus yard has been and continues to be a critical element of the Norfolk Southern rail network, serving as a key facility for switching rail traffic, including

construction aggregates, foundry metals and lumber products, moving from Birmingham, Alabama to Macon, Georgia and on to southeastern states and, conversely, rail traffic moving west to Birmingham and on through to New Orleans and western Tennessee." Plum Decl. ¶ 4. This yard "hosts a variety of integrated operations, as the multitude of tracks are used to separate the railcars in incoming trains onto different tracks based on destination or other criteria; to classify, or group, railcars in order to build outgoing trains based on destination or the industries they serve; and to stage railcars for future operations." *Id.* ¶ 5. In fact, the Columbus yard "handles approximately 45,000 railcars in a calendar year." *Id.*

"The Columbus yard also serves as the interchange point between Norfolk Southern and Columbus and Chattahoochee Railroad, Inc. ("CCH"), a Class III common carrier of freight by rail that operates between Columbus and Mahrt, Alabama, serving customers that include the Pittsview, Alabama paper mill of a global leader in paper and packaging; the Columbus area quarry of a supplier of construction aggregates for parties including various state Departments of Transportation; and the Columbus area facility of one of the largest metal recyclers in the United States." *Id.* ¶ 6. Finally, the Columbus yard "serves as the only rail access point to U.S. Army Fort Benning and The Maneuver Center of Excellence … a federal installation requiring rail service that is located on the Strategic Rail Corridor Network (STRACNET) as defined by the Military Surface Deployment and Distribution Command." *Id.* ¶ 7.

For all these reasons: "If Norfolk Southern were forced to abandon the Columbus yard, the impacts on Norfolk Southern's rail network and rail-served customers would be highly disruptive." *Id.* ¶ 8. In fact, Columbus's desired remedy "would cut off Fort Benning and all CCH customers from rail service altogether, and it is unclear at this time what alternative routing Norfolk

Southern could effectively utilize for the rail traffic that presently moves through the Columbus yard." *Id.*

**b.**     In correspondence between the parties, Columbus has acknowledged ICCTA preemption, but taken the position "that the parcels [at issue] are not subject to the STB's jurisdiction because they do not contain main line tracks and constitute only 'spur, industrial, team, switching, or side tracks' which the STB does not have authority over pursuant to 49 U.S.C.A. § 10906." *See* Compl. Ex. C.  But even setting aside Columbus's mistaken factual premise—the yard actually does contain main-line track—Columbus has the law wrong.

As courts and the STB have explained, § 10906 "does not … mean that the types of tracks mentioned therein are outside the jurisdiction of the STB. Instead, this provision simply provides that STB approval is not required prior to the construction, acquisition, operation, abandonment or discontinuance of these types of tracks." *Cedarapids*, 265 F. Supp. 2d at 1013.  In other words: "Industrial yard track, while excepted under 49 U.S.C. 10906 from the need to obtain Board authority for construction, abandonment, or operation, is nevertheless subject to the Board's jurisdiction and is not subject to state or local regulation." *Joseph R. Fox—Pet. for Decl. Order*, No. FIN 35161, 2009 WL 1383503, at *3 (S.T.B. served May 18, 2009); *accord Hartwell R.R. v. Hartwell First United Methodist Church, Inc.*, 894 S.E.2d 481, 490 (Ga. App. 2023).  The STB recently reiterated these principles in rejecting a similar local-government attempt to seize allegedly abandoned track, agreeing with a district court that held the claims completely preempted.  *See Ne. La. Multimodal Dist.—Pet. for Decl. Order.*, No. FD 36809, 2025 WL 2651163, at *4 (S.T.B. served Sept. 15, 2025); *Ne. Louisiana R.R. Dev. Dist.*, 2024 WL 2926596, at *2 (denying remand because "the STB retains jurisdiction over track excepted under § 10906").

11

## 2.    ICCTA creates exclusive federal causes of action.

In this area, ICCTA preemption is not merely defensive; the statute also "creates an exclusive cause of action," as required for complete preemption. *See Poet Theatricals*, 2023 WL 3454614, at *1.

As the Fourth Circuit explained in *Skidmore*, ICCTA "creates an exclusive federal cause of action in an area of 'overwhelming national interest.'" 1 F.4th at 216. ICCTA provides that a "rail carrier providing transportation subject to the jurisdiction of the [Surface Transportation Board] … is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of [the ICCTA]." 49 U.S.C. § 11704(b). A party may "bring a civil action … to enforce liability against a rail carrier providing transportation subject to the jurisdiction of the Board under [the ICCTA]." *Id.* § 11704(c). This language "creates a cause of action that plaintiffs can pursue directly in federal court." *Skidmore*, 1 F.4th at 216; *see also PCI Transp., Inc. v. Fort Worth & Western R.R.*, 418 F.3d 535, 544–45 (5th Cir. 2005) (because "ICCTA provides the exclusive cause of action … we hold that the complete preemption doctrine applies").

In addition, ICCTA also provides an exclusive cause of action for plaintiffs in Columbus's position—adverse abandonment. *See Scioli Turco, Inc. v. Phil. & Reading R.R.*, No. 21-563, 2023 WL 7646535, at *5 (E.D. Pa. Nov. 14, 2023) (where plaintiffs' property claims are preempted by ICCTA, "they are not without a remedy" because they "may file an 'adverse abandonment' application with the STB"); *Maine Cent. R.R.—Abandonment Exemption*, No. AB-83, 2000 WL 36744028, at *4 (S.T.B. served Sept. 14, 2000) (same). This cause of action allows parties like Columbus to seek STB approval to remove rail property from the agency's exclusive jurisdiction and the national rail system, subjecting it to state law. *See* 49 U.S.C. § 10903(d); *Thompson v. Tex. Mexican R.R.*, 328 U.S. 134, 144–45 (1946) (parties "other than [rail] carriers," like parties whose "property [allegedly] is involved," may apply for abandonment of railroad property); *e.g.*,

*Norfolk S. Ry.—Adverse Abandonment*, No. AB 290, 2012 WL 1339070, at *3 (S.T.B. served Apr. 17, 2012) (granting request for adverse abandonment). And while this cause of action requires an STB determination, it can be invoked by bringing a claim in federal court, which could then be referred to the agency. *Cf. Pejepscot Indus. Park v. Me. Cent. R.R.*, 215 F.3d 195, 205–06 (1st Cir. 2000) (ordering agency referral of ICCTA issue).

"In sum, the [ICCTA's] exclusive cause of action demonstrates Congress's clear intent to 'entirely displace' attempts to use state-law adverse possession or prescriptive easement claims to dispossess a railroad of land over which it has a right of way." *Skidmore*, 1 F.4th at 218.

### B.    Columbus's claims fall within the scope of ICCTA's exclusive causes of action.

The second question for complete-preemption purposes is whether Columbus's state-law claims "fall[] within [the] exclusive federal cause of action." *Poet Theatricals*, 2023 WL 3454614, at *1. Under the principles just explained, they do.

First, *Skidmore* held that it does not matter whether the exclusive cause of action under § 11704(b) allows a party to "ask the court to quiet title to the land in her favor." 1 F.4th at 216. "[T]he Supreme Court has held that complete preemption requires only that the preempting federal statute provide a *cause of action* that preempts state law, not that the statute provide *remedies* like those available under state law." *Id.* (citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 561 (1968); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 n.4 (1987)). "Although the [ICCTA] makes no adverse-possession-like remedy available to plaintiffs, the Act nonetheless affords plaintiffs a federal cause of action. And, by its terms, the Act makes that cause of action the 'exclusive' avenue for obtaining judicial relief by preempting the remedies provided under State law." *Id.* (cleaned up).

Second, in any event, Columbus's claim falls squarely within ICCTA's adverse-abandonment cause of action. As noted, this cause of action allows parties "other than [rail]

13

carriers," including parties whose "property [allegedly] is involved"—like Columbus—to apply for abandonment of railroad property or facilities. *Thompson*, 328 U.S. at 144–45. If such a claim succeeded, the STB "would withdraw [its] primary jurisdiction over the line, thereby clearing the way for the operation of state law," including state property law. *See Maine Cent. R.R.*, 2000 WL 36744028, at *4. Thus, if Columbus has any valid state-law claims here (which Norfolk Southern does not concede), it can (and should) pursue those claims by first securing adverse abandonment from the STB.

*    *    *

In sum, ICCTA comprehensively and exclusively governs railroad property and facilities, including alleged abandonments thereof; the statute provides exclusive federal causes of action for parties in Columbus's position; and Columbus's claims here fall squarely within those causes of action. Complete preemption thus applies, meaning Columbus's claims arise under federal law and this Court has subject-matter jurisdiction.

## II.    Columbus's claims should be dismissed under Rule 12(b)(6).

When complete preemption applies, it "converts [the plaintiff's] state-law causes of action into a federal claim." *Schleider*, 121 F.4th at 164. "In other words, the district court must 'convert' the state-law claims 'into federal claims that need to be decided as federal claims under' the preempting statute." *Skidmore*, 1 F.4th at 218. Thus, this Court "must convert" Columbus's claims into a claim "under the [ICCTA] and analyze [it] using" the Rule 12(b)(6) standard. *Id.*

Columbus's complaint does not state a claim under ICCTA. As just explained, ICCTA creates two relevant causes of action. The first allows damages claims against railroads for violating ICCTA. 49 U.S.C. § 11704(b). To state such a claim, Columbus would have to allege that it "[1] suffered damages [2] as a result of a rail carrier's violation of the ICCTA." *Elam v. Kansas City S. Ry.*, 635 F.3d 796, 809 (5th Cir. 2011). It does not and cannot do so.

14

The other relevant cause of action, as explained, is adverse abandonment. *See* 49 U.S.C. § 10903(d). This cause of action is more analogous to Columbus's state-law claims because it addresses the status of property within the national rail network, including whether that property should be deemed abandoned because the railroad has discontinued some or all operations there. But adverse abandonment turns on "whether there is a present or future public need for rail service over the [property] and whether that need is outweighed by other interests." *Norfolk S.*, 2012 WL 1339070, at *3. Columbus does not and cannot allege that Norfolk Southern lacks any need to use the Columbus Yard for rail operations, or that the railroad's need for the property is outweighed.

Because complete preemption transforms Columbus's claims into claims under ICCTA— but Columbus cannot state a plausible claim for relief under ICCTA—dismissal under Rule 12(b)(6) is warranted.

## CONCLUSION

For these reasons, the Court should dismiss Columbus's complaint for failure to state a claim.

This 14th day of October, 2025

                     Respectfully submitted,

                     */s/ J. Steven Stewart*
                     J. STEVEN STEWART
                     Georgia Bar No. 681550
                     LEE M. GILLIS, JR.
                     Georgia Bar No. 217515
                     Hall, Bloch, Garland & Meyer, LLP
                     Post Office Box 5088
                     Macon, Georgia 31208-5088
                     (478) 745-1625
                     stevestewart@hbgm.com
                     leegillis@hbgm.com

                     TOBIAS S. LOSS-EATON
                      *Lead Counsel*
                     (*pro hac vice*)
                     Sidley Austin LLP
                     1501 K Street NW
                     Washington, DC 20005
                     (202) 376-8427
                     tlosseaton@sidley.com

                     *Counsel for Defendants Norfolk Southern*
                     *Corporation, Norfolk Southern Railway*
                     *Company, Central of Georgia Railroad*
                     *Company, and The South Western Rail Road*
                     *Company*

## CERTIFICATE OF SERVICE

I hereby certify that *Defendants Norfolk Southern Corporation, Norfolk Southern Railway Company, Central of Georgia Railroad Company, and The South Western Rail Road Company's Memorandum of Law in Support of Their Motion to Dismiss* has been served upon all counsel of record for the parties in this action via electronic mail addressed as follows:

James C. Clark, Jr.
Thomas F. Gristina
Jack P. Schley
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
P.O. Box 1199
Columbus, GA 31902
jclark@pagescrantom.com
tgristina@pagescrantom.com
jschley@pagescrantom.com

Clifton C. Fay
Lucy T. Sheftall
P.O. Box 1340
Columbus, GA 31902
cfay@columbusga.org
lsheftall@columbusga.org
*Counsel for Plaintiff Consolidated Government of Columbus, Georgia*

Eric L. Leach
Jeffrey C. Close
Milton, Leach, Whitman, D'Andrea, Eslinger, Collins & Close, P.A.
3127 Atlantic Blvd.
Jacksonville, FL 32207
eleach@miltonleach.com
jclose@miltonleach.com
*Counsel for Defendants Genesee & Wyoming Railroad Services, Inc., Columbus & Chattahoochee Railroad, Inc., and Georgia Southwestern Railroad, Inc.*

This 14th day of October, 2025.

/s/ J. Steven Stewart
J. STEVEN STEWART