IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CONSOLIDATED GOVERNMENT     *
OF COLUMBUS, GEORGIA,     *
    *
    Plaintiff,     *
    *
v.     *     Case No.: 4:25-cv-00312-CDL
    *
NORFOLK SOUTHERN CORP.,     *
NORFOLK SOUTHERN RAILWAY     *
COMPANY, CENTRAL OF GEORGIA     *
RAILROAD COMPANY, THE     *
SOUTH-WESTERN RAIL ROAD     *
COMPANY, GENESEE & WYOMING     *
RAILROAD SERVICES, INC.,     *
COLUMBUS & CHATTAHOOCHEE     *
RAILROAD, INC., and GEORGIA     *
SOUTHWESTERN RAILROAD, INC.,     *
    *
    Defendants.     *

**COLUMBUS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Consolidated Government of Columbus, Georgia ("Columbus"), by and through

counsel, hereby responds in opposition to Defendants Norfolk Southern Corp., Norfolk Southern

Railway Co., Central of Georgia Railroad Co., and The South Western Rail Road Co.'s Motion to

Dismiss [ECF No. 9] and Defendants Genesee & Wyoming Railroad Services, Inc., Columbus &

Chattahoochee Railroad, Inc., and Georgia Southwestern Railroad, Inc.'s Motion to Dismiss [ECF

No. 10] (all Defendants hereinafter collectively "Railroads"):

**-- INTRODUCTION --**

This case concerns enforcement of agreements between railroad companies and a city. The

parties negotiated and agreed that the city would provide public land to the Railroads free-of-

charge for depot purposes in exchange for the benefits of having passenger rail services within the

city. The benefits of that bargain were enjoyed by the parties for about a century. Then, the Railroads made unilateral decisions to terminate passenger services and close their depots. These events were contemplated by the parties during their initial negotiations, and were addressed by the mutually agreed terms that title to the land would revert to the city if the Railroads closed their depots. This limitation served two immediate purposes: it protected the city's interest in maintaining the land for public benefit, and it helped the start-up Railroads to begin their private, income generating services (which were considered to benefit the public at the time) at a lower cost. Additionally, the limitation created an incentive for the Railroads to continue providing depot services to this community.

Now, due to the depot closures, the benefits of the agreement are enjoyed only by the Railroads to the deprivation and detriment of the city. Unfortunately, once confronted with their agreements, the Railroads seek to avoid the same by hiding behind federal laws they argue were designed to protect them; except, this Circuit applies a narrow reading of those laws, and other Circuits have applied this narrow reading and ruled those laws were not intended or designed to protect the Railroads from their own contracts and agreements. It was a business decision by the Railroads to close their depots—at the calculated risk of losing the land they received for depot purposes. The Railroads made their decision; it is natural, logical, and lawful that they must accept the known and expected consequences of that decision. For this and the other reasons that follow, the Railroads' arguments for dismissal must fail, and the case should be remanded.

## -- LEGAL STANDARD --

### I.    Motion to Dismiss

Under a motion to dismiss for failure to state a claim, the factual allegations from the complaint must be accepted as true with all reasonable inferences taken in favor of the plaintiff.

*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint"); *see also American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (all allegations, accepted as true, are "constru[ed] [ ] in the light most favorable to the plaintiff") (citation omitted).

## II.    Complete Preemption

The Eleventh Circuit recently discussed complete preemption, as follows:

"Federal preemption is ordinarily a federal defense to the plaintiff's suit" that "does not authorize removal to federal court."[1] But complete preemption "is a doctrine distinct from ordinary preemption and … it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims."[2] "Complete preemption occurs when a federal statute both preempts state substantive law and 'provides the exclusive cause of action for the claim asserted.'"[3] Accordingly, the Supreme Court has explained that it "has found complete pre-emption" where "the federal statute at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing the cause of action."[4] Complete preemption, however, is rare.

To determine whether a state-law cause of action is completely preempted, we "look beyond the complaint to determine if the suit is, in reality, 'purely a creature of federal law,'" such that the plaintiff's claim "creates the federal question jurisdiction requisite to removal to federal court."[5] "If an individual, at some point in time, could have brought his claim under the relevant federal statute, *and where there is no other independent legal duty that is implicated by a defendant's actions*, then the individual's cause of action is completely pre-empted by that federal statute."[6] A federal cause of action alone is therefore insufficient; "to give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, *affirmatively divest* state courts of their presumptively concurrent jurisdiction."[7]

*Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 160-161 (11th Cir. 2024) (emphasis added) (internal citations footnoted). Further, when a case is removed based on an allegation of

[1] *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).
[2] *Geddes v. Am. airlines, Inc*., 321 F.3d 1349, 1353 (11th Cir. 2003).
[3] *Dial v. Healthspring of Ala., Inc*., 541 F.3d 1044, 1047 (11th Cir. 2008).
[4] *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).
[5] *Geddes*, 321 F.3d at 1353.
[6] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).
[7] *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990).

preemption, as here "'[a] removing defendant bears the burden of proving federal jurisdiction.'" *Id.* at 155 *quoting Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008). If federal jurisdiction is in doubt, the Eleventh Circuit favors remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("…removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand").

## -- FACTUAL ALLEGATIONS --

This case concerns "voluntary agreements" accepted by the Railroads. [Complaint (ECF No. 1-2) at ¶ 84]. Columbus asserts various claims against the Railroads seeking to enforce the documented terms of those freely negotiated and accepted agreements. [*Id.* at ¶¶ 18-19, 22, 26, 33-38, 44-47, 54-59, 64-66, 71-87]. And Columbus seeks relief from the Railroads for its claims consistent with the terms of the voluntary agreements. [*Id.* at ¶ 88-125].

Columbus specifically alleges that: (i) the real property at issue in this case is historic, public land [*Id.* at ¶¶ 13-17], (ii) the Railroads (or their predecessors in interest) petitioned Columbus' city council for permission to use the public land for free for the specific purpose of locating their train depots [*Id.* at ¶¶ 18, 33, 44, 56], (iii) council agreed by resolutions to permit the Railroads to use the land pursuant to expressed terms and limitations articulated in the council resolutions [*Id.* at ¶¶ 19, 21, 34, 45, 56-59, 64-66), (iv) the Railroads accepted those terms and limitations, entered upon the land subject to the same, and began using the property for the expressed purpose of operating depots [*Id.* at ¶¶ 22, 38-39, 48-49, 72], (v) the Railroads later ceased to use the land for depot purposes [*Id.* at ¶¶ 27, 39, 49, 73], (vi) the Railroads are not currently using the land for depot purposes [*Id.*], and (vii) Columbus' interest and claims arising from the agreements were triggered by the Railroads' termination of depot services on the land (amongst other events) [*Id.* at ¶¶ 32, 43, 53, 77].

Based on these facts, Columbus filed trespass and ejectment claims against the Railroads (Counts 1-2 and 4-7 of the Complaint). Columbus also seeks equitable relief to enjoin further trespasses and recover mesne profits (Counts 3 and 8), and recovery for nuisance and attorney's fees (Counts 9-11). Each of these claims cites to Georgia law for support and references the voluntary agreements in the resolutions as the basis for recovery. [*Id.* at ¶¶ 88-125].

Accepted as true and construed in Columbus' favor, this case consists exclusively of nonregulatory claims arising from voluntary agreements which are not preempted by federal law and should be resolved in state court where the case was initially filed.

## -- PROCEDURAL HISTORY & JURISDICTION --

The Railroads' notice of removal [ECF No. 1] and their pending motions to dismiss are all based on the argument that Columbus' claims are completely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"). [ECF No. 1 at ¶ 3; ECF No. 9-1 *generally*; ECF No. 10 at ¶¶ 1-2]. They argue complete preemption creates federal question jurisdiction. [*Id.*] Federal question jurisdiction, codified as 28 U.S.C.A. § 1331, is the only basis cited by the Railroads for removal. [ECF No. 1 at ¶¶ 11-12]. Therefore, should the Court determine that complete preemption does not apply here, then the case has no basis for federal jurisdiction and it should be remanded to state court.[8]

## -- LEGAL ARGUMENT --

The Court must deny the Railroads' motions to dismiss. For the Court to grant the Railroads' pending motions, it must make a critical finding that enforcement of the voluntary

---

[8] "[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-975 (11th Cir. 2005) *quoting Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("it is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking.")

agreement between Columbus and the Railroads is *completely preempted* by federal law. To demonstrate complete preemption, the Railroads have the burden of making two showings. *First*, the Railroads must show that Columbus' state law claims are subject to defensive, also called ordinary, preemption. *See Ammedie v. Sallie Mae, Inc.,* 485 F. App'x 399, 402 (11th Cir. 2012) *quoting Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005) ("if it appears that a claim is not even defensively preempted, then it will not be completely preempted either"). *Second*, the Railroads must additionally show that Columbus "'could have brought [its] claims under the relevant federal statute, *and* [that] there is no other independent legal duty that is implicated by [the Railroads'] actions. *Schleider*, 121 F.4th at 160 *quoting Aetna Health*, 542 U.S. at 210 (emphasis added). The lack of an "other independent legal duty" is critical to the Railroads' motions because "[a] federal cause of action alone is … insufficient; 'to give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction.'" *Id. quoting Yellow Freight*, 494 U.S. at 823.

With regards to the first step, the Eleventh Circuit has ruled that municipal law, i.e., local zoning ordinances, are not preempted by the ICCTA. *See Fla. East Coast Ry. Co. v. City of West Palm Beach*, 266 F.3d 1324, 1330-39 (11th Cir. 2001) ("*Fla. East Coast*") ("Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' ….") The Fourth Circuit relied on the ruling in *Fla. East Coast* when it held that voluntary agreements are not regulatory acts and thus not expressly or impliedly preempted by the ICCTA. *See PCS Phosphate Co., Inc. v. Norfolk Southern Corp.*, 559 F.3d 212, 218-22 (4th Cir. 2009) ("*PCS Phosphate*") ("Norfolk Southern cannot use the ICCTA to 'shield it from its own commitments'") (internal citation omitted). The Seventh Circuit has also ruled that voluntary agreements involving railroads are not

preempted by the ICCTA. *See Union Pacific Railroad Co. v. Chicago Transit Authority*, 647 F.3d 675, 681-83 (7th Cir. 2011) ("*Union Pacific/CTA*") ("If a state or local government secures the use of property in a way that affects railroad transportation by contract or other agreement, there is no issue of federal preemption; but if it attempts to secure such use by regulation (in this case, by condemnation), then the possibility of federal preemption may arise"). While *PCS Phosphate* and *Union Pacific/CTA* are only persuasive authorities, the Court should adopt the Fourth Circuit's application of Eleventh Circuit precedent (*Fla. East Coast*), and the Seventh Circuit's discussion of similar circumstances, and determine Columbus' claims arise from voluntary agreements rather than state regulations and are not preempted by the ICCTA. The relevancy of those decisions here is developed further below.

As for the second step, the Railroads cannot identify any federal cause of action under which Columbus could have initially brought its claim (*see* section III below), or avoid the fact that an "other independent legal duty" (the voluntary agreements with Columbus) were implicated by their decisions to close their depots. *See Schleider*, 121 F.4th at 160 *quoting Aetna Health*, 542 U.S. at 210. Columbus' "voluntary agreement" and "other independent legal duty" arguments are related so they are discussed together below.

I.     **Columbus' Claims are Not Defensively Preempted and Thus Not Completely Preempted.**

The Railroads must show that Columbus' claims are subject to defensive preemption, *Ammedie*, 485 F. App'x at 402, and that Columbus' claims are exclusively addressed by federal law without a basis in any other legal duty. *See Schleider*, 121 F.4th at 160-61. The Railroads incorrectly argue that Columbus' claims fall under the scope of ICCTA's express preemption provision, 49 U.S.C. § 10501(b). *See* [ECF No. 1 at ¶¶ 3, 14, 17; ECF No. 9-1 at pp. 6-7; ECF No. 10 at ¶¶ 1-2]. As the Eleventh Circuit has held, the ICCTA expressly preempts only *state*

*regulations* giving rise to liability. *See Fla. East Coast*, 266 F.3d at 1330-31. Voluntary agreements are not regulations and thus are not a preempted basis for imposing liability on the Railroads. *See PCS Phosphate*, 559 F.3d at 218-20. Additionally, duties arising from a contract or voluntary agreement constitute an independent legal basis for recovery; thus, defeating the requisite exclusivity of federal law for preemption to apply. *See Schleider*, 121 F.4th at 160.

a. **The Eleventh Circuit Has Ruled the ICCTA Preempts Only State Regulations Which Give Rise to Railroad Liability for Acts the ICCTA Intended to Free from Outside Regulation.**

When a federal statute contains an express preemption clause, as the ICCTA does, "courts focus on the plain wording of the clause" to determine whether a specific state action is preempted. *OPIS Mgmt. Res. LLC v. Sec'y Fla. Agency for Health Care Admin.*, 713 F.3d 1291, 1294 (11th Cir. 2013) *quoting Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011). "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *Id. quoting Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008). The question for this Court, therefore, is whether the ICCTA's preemption clause can be unambiguously read to preempt enforcement of the agreements between Columbus and the Railroads. Under Eleventh Circuit precedent, it cannot.

The relevant part of the ICCTA analyzed for preemption in *Fla. East Coast* is the current version of 49 U.S.C. § 10501(b), which the Eleventh Circuit recited, as follows:

(b) The jurisdiction of the [Surface Transportation] Board over--

    (1) transportation by rail carries, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

    (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or

> facilities, even if the tracks are located, or intended to be located, entirely in one State,

> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to *regulation* of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

*Fla. East Coast*, 266 F.3d at 1330 *citing* 49 U.S.C. § 10501(b) (emphasis added). In *Fla. East Coast*, the Eleventh Circuit conducted a comprehensive statutory interpretation of the ICCTA's preemption clause, and determined:

> [t]he ICCTA pre-emption provision does not preclude the application of "all other law." *Cf.* 49 U.S.C. § 11341(a) (with regard to mergers and acquisitions, railroad companies exempt from "antitrust laws and from all other law, including State and municipal law"). Rather, express pre-emption applies only to state laws "with respect to *regulation* of rail transportation." 49 U.S.C. § 10501(b) (emphasis added). This necessarily means something qualitatively different from laws "with respect to rail transportation." [citation omitted] In this manner, Congress narrowly tailored the ICCTA pre-emption provision to displace only "regulation," i.e., those state laws that may reasonably be said to have the effect of "managing" or "governing" rail transportation, [citation omitted], while permitting the continued application of laws having a more remote or incidental effect on rail transportation.

*Id.* (emphasis in original). The Court then examined the legislative history, which confirmed that "the exclusivity is limited to remedies with respect to rail *regulation -- not State and Federal law generally.*" *Id.* at 1338 (emphasis in original) (*quoting* H.R. Conf. Rep. 104-422 (1995). The Eleventh Circuit's conclusion that the ICCTA expressly "displaces only 'regulations'" has been widely adopted. *See, e.g., Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 410 (5th Cir. 2010) *citing Fla. East Coast* ("We find this interpretation of the ICCTA to be persuasive"); *see also PCS Phosphate*, 559 F.3d at 218 *citing Fla. East Coast*.

Later, the Eleventh Circuit considered § 10501(b) again in the context of claims for nuisance brought under Georgia law against a railroad and determined the claims were preempted because the claims would "permit monetary liability to accrue under a state law" against the railroads for their operation of a side track. *Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1070 (11th

Cir. 2010). The facts in that case are distinguishable from Columbus' claims because the liability Columbus seeks to impose on the Railroads does not accrue or originate under state law; rather, the basis for liability arises from the Railroads' own agreements—independent legal duties accepted by the Railroads. *Id.* The Court should find that the ICCTA does not preempt voluntary agreements. *See Union Pacific/CTA*, 647 F.3d at 681-683.

### b.  Voluntary Agreements Are Not "Regulations" Subject to ICCTA Preemption

Since the Eleventh Circuit's recognition in *Fla. East Coast* that the ICCTA preempts only "regulations," numerous courts – including at least two Circuit Courts (Fourth and Seventh) – have recognized that voluntary agreements are not "regulations" subject to the ICCTA's preemption provision.  *See, e.g., Edwards v. CSX Transp., Inc.*, 983 F.3d 112, 121 n.11 (4th Cir. 2020) ("voluntary agreements are not the sort of rail 'regulation' contemplated by the [ICCTA].") (internal grammar removed); *PCS Phosphate*, 559 F.3d at 214, 218-19 ("Congress surely would have spoken more clearly, and not used the word 'regulation,' if it intended [to preempt enforcement of voluntary agreements.]").  *Union Pacific/CTA*, 647 F.3d at 682 (7th Cir. 2011) ("If a state or local government secures the use of property in a way that affects railroad transportation by contract or other agreement, there is no issue of federal preemption."). Indeed, defendant Norfolk Southern has, in briefs submitted to at least one other court, recognized this proposition as undisputed.  *Cocquyt v. Norfolk Southern Corp.*, No. 3:22-CV-1022-RLM-MGG, 2023 WL 2446339, at *4-5 (N.D. Ind. Mar. 8, 2023) [ECF No. 17, *Norfolk Southern's Brief in Opposition to Plaintiff's Motion to Remand*, at p. 6] ("True, the ICCTA does not preempt state law claims based on private contracts, which generally are not a form of 'regulation.'") *citing PCS Phosphate*, 559 F.3d at 218.

While the Eleventh Circuit has not had the opportunity to address the issue of whether

voluntary agreements are "regulations" in context of the ICCTA, it has addressed the issue with respect to the Airline Deregulation Act (ADA), the airline's analog to the ICCTA. That Act preempts enforcement of any state "law, regulation, or other provision having the force and effect of law" related to air carriers. 49 U.S.C.S. § 41713(b)(1). The Eleventh Circuit has held this preemption clause, which is even broader than the ICCTA's, does "not preempt a 'state-law-based court adjudication' concerning a contractual obligation 'voluntarily' undertaken by an air carrier." *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 850 (11th Cir. 2022) (internal grammar removed) *citing American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995) ("*American Airlines/Wolens*") ("terms and conditions airlines offer and passengers accept are privately ordered obligations 'and thus do not amount to a State's … regulation … having the force and effect of law'"). Based on the ruling in *Cavalieri*, there is little reason to believe the Eleventh Circuit would interpret the ICCTA's narrower preemption clause as preempting state-law adjudication of voluntary agreements. The Fourth Circuit conducted this analysis in *PCS Phosphate* when it determined the ICCTA does not preempt enforcement of covenants in deeds. *See Id.*, 559 F.3d at 219-20.

### c.  The Fourth Circuit's Decision in *PCS Phosphate*

The foundational case for the voluntary agreement exception to ICCTA preemption, coincidentally, also involved Norfolk Southern attempting to "use the ICCTA to 'shield it from its own commitments.'" *PCS Phosphate*, 559 F.3d at 217, 222 *quoting Township of Woodbridge v. Consolidated Rail Corp.*, 2000 WL 1771044 (S.T.B. December 1, 2000) at *3. There, Norfolk Southern's predecessor-in-interest accepted deeds of easement from a mine which included a covenant requiring that, should certain conditions be met, the railroad "'at its expense shall relocate the said track on [a] new right of way ….'" *Id.* at 215. Decades later, the conditions were met and the mine submitted a formal request to Norfolk Southern to relocate the line, which Norfolk

Southern refused. *Id.* at 216. The mine then sued in federal court, based on diversity jurisdiction, to enforce the covenant in the deeds. *Id.*

While the federal lawsuit was pending, Norfolk Southern applied to the Surface Transportation Board ("STB") to abandon the old line and specifically asked the STB to declare the federal lawsuit to be preempted by 49 U.S.C. § 10501(b). *Id.* The STB rejected the abandonment application and issued the following statement: "'at this point it is not clear that the court action would interfere with our exclusive jurisdiction over rail transportation, given [Norfolk Southern's] alleged consent to the parties' purported contractual arrangement.'" *Id.* at 216-17 *quoting Norfolk S. Ry. Co. – Abandonment – In Beaufort County, NC*, 2005 WL 3308783 (S.T.B. Dec. 6, 2005) at *1. The federal lawsuit proceeded through discovery and both parties filed motions for summary judgment. *PCS Phosphate*, 559 F.3d at 217. The trial court ruled, in part, that the mine's claims concerning the breach of the deed covenants were not preempted. *Id.* Norfolk Southern appealed and the Fourth Circuit framed the issue as "whether the ICCTA expressly preempts PCS's breach of agreement claims." *Id.*

To answer this question, the Fourth Circuit began by reviewing the text 49 U.S.C. § 10501(b) and, specifically citing the Eleventh Circuit's opinion in *Fla. East Coast*, determined "[t]he express preemption clause focuses specifically on 'regulation' ...." (citations omitted). *Id.* at 218. The Court then analyzed whether the deed covenants were regulatory in nature, and concluded that:

> [v]oluntary agreements between private parties ... are not presumptively regulatory acts, and we are doubtful that most private contracts constitute the sort of "regulation" expressly preempted by the statute. [ ] Such a broad reading of the preemption clause would make it virtually impossible to conduct business, and Congress surely would have spoken more clearly, and not used the word "regulation," if it intended that result.

*PCS Phosphate*, 559 F.3d at 218-19 *relying on Fla. East Coast*, 266 F.3d at 1331.

Next, the Court reviewed the legislative history of the ICCTA and found reports noting that the ICCTA and 49 U.S.C. § 10501(b) were intended to deregulate and preempt State *economic regulations* of railroads. *Id.* at 219 (emphasis in original). Those reports "did not mention voluntary agreements" so the Court concluded "that such agreements do not fall into the core of economic regulation that the ICCTA was intended to preempt." *Id.* The Fourth Circuit relied on the Supreme Court's analysis of the ADA that 'in light of the Act's deregulatory purpose' the ADA's preemption language did not apply to breach of contract claims. *Id. quoting American Airlines/Wolens*, 513 U.S. at 229. With further citation to STB authority "that courts, not the STB, are the proper forum for contract disputes, even when those contracts cover subjects that seem to fit within the definition of 'rail transportation'" the Fourth Circuit "declined to view private contracts as presumptively regulatory ... [and] concluded that enforcement of the relocation agreements is not expressly preempted ...." *PCS Phosphate*, 559 F.3d at 220.

The Court quickly resolved the question of whether the relocation agreements are impliedly preempted after reviewing whether the remedy of enforcing relocation would create any unreasonable interference with rail transportation. The Court responded in the negative because the remedy sought (relocation) was being enforced through a voluntary agreement. *Id.* at 221. Specifically, the Court determined:

> [t]he relocation agreements were freely negotiated between sophisticated business parties. The agreements envisioned this exact circumstance—that many years after the agreements were made, the railroads would have to pay to relocate this portion of the line. We can assume, therefore, that the agreements reflect a market calculation that the benefits of operating the rail line for many years would be worth the cost of paying to relocate the line in the future.

*Id.* Turning again to the STB, which recognized, "'voluntary agreements must be seen as reflecting the carrier's own determination and admission that the agreements would not unreasonably interfere with interstate commerce" the Court considered the length of time between the execution

13

of the deeds and the notice of intent to enforce the relocation provision ("over 40 years"), and ruled that "any interference is not unreasonable" because Norfolk Southern received the benefit of the agreements for all of those forty years. Consequently, the Fourth Circuit "rejected Norfolk Southern's preemption claims …." *Id.* at 221-22 *quoting Township of Woodbridge*, 2000 WL 1771044, at *3.

Rejecting preemption in this case, consistent with the opinion in *PCS Phosphate*, would be proper and consistent with Eleventh Circuit precedent (*Fla. East Coast*) because the circumstances of Columbus' claims are exceedingly similar to the facts in that Fourth Circuit case. Columbus and the Railroads agreed that the real property at issue would revert to the city if the Railroads closed their depots, and the Railroads have benefited from that bargain for over a century. Columbus simply seeks to enforce that agreement. A distinguishing factor between this case and *PCS Phosphate* is that the issue of preemption was resolved by the Fourth Circuit trial court on summary judgment following the close of discovery. *Id.*, 559 F.3d at 217. If this Court has any hesitation regarding the preemption issue in this case, the motions should be denied so that the parties can proceed to discovery so further evidence may be considered to illuminate the voluntary agreements in this case. *See Burns*, 31 F.3d at 1095 (uncertainties regarding jurisdiction favor remand).

**d.  The Seventh Circuit Decision in *Union Pacific/CTA***

The Railroads repeatedly cite to *Union Pacific/CTA* in their motions to dismiss. [Motion (ECF No. 9-1) at pp. 6-7]; [Motion (ECF No. 10) at ¶¶ 1-2]. The Seventh Circuit did rule in favor of preemption under the ICCTA in that case; however, that Court's reasoning actually cuts against preemption in this case.

For almost fifty years, the Chicago Transit Authority ("CTA") leased a portion of Union Pacific's railroad tracks through Chicago for the purpose of operating public passenger

transportation services. *Union Pacific/CTA*, 647 F.3d at 676-77. After many years of paying rent to Union Pacific pursuant to the lease, the CTA moved to condemn the leased tracks as an attempt to avoid making any further lease payments. *Id.* Union Pacific sought an injunction in federal court arguing the condemnation action was preempted by the ICCTA, and the district court agreed. The CTA appealed to the Seventh Circuit, which framed the issue as "whether the proposed state condemnation establishing a perpetual easement over the Right of Way is a regulation of railroad transportation preempted by the [ICCTA]." *Id.* at 679. In reaching its decision that the condemnation action was preempted, the Seventh Circuit specifically focused on the fact that condemnation is a "regulation." *Id.* at 682. The Circuit Court expressly noted the decision would be different if it involved a voluntary agreement rather than condemnation.  As the Court stated:

> [s]hould the CTA prevail, the use would be the result of a condemnation. And this is significant. Federal preemption does not apply to *all* situations where the use of property prevents or unreasonable interferes with railroad transportation; it applies to those situations were a *regulation* prevents or unreasonably interferes with railroad transportation. If a state or local government secures the use of property in a way that affects railroad transportation by contract or other agreement, there is no issue of federal preemption; but if it attempts to secure such use by regulation (in this case, by condemnation), then the possibility of federal preemption may arise.

*Id.* at 681-82 (emphasis in original). The Seventh Circuit concluded: "the condemnation is preempted by federal law because it is a regulation, and not a contract or other agreement, that has the effect of preventing or unreasonably interfering with railroad transportation." *Id.*

Columbus is not pursuing condemnation of the Railroads' property. Instead, Columbus seeks to enforce an agreement it made with the Railroads, and which the Railroads accepted, relied on, and benefited from for many decades. Therefore, Columbus is not regulating the Railroads and its requested relief is not unreasonable because the Railroads contemplated its occurrence and agreed to it. Rejecting preemption of Columbus' claims by denying the Railroads' motions would be consistent with the Seventh Circuit holding in *Union Pacific/CTA*.

II.    **The Complaint Sufficiently Identifies the Real Property at Issue with Metes-and-Bounds Descriptions and Alleges Improper Use and Occupation of that Property by All of the Defendant Railroads.**

Defendants Genesee & Wyoming Railroad Services, Inc., Columbus & Chattahoochee Railroad, Inc., and Georgia Southwestern Railroad, Inc. (collectively "G&W") moved separately for dismissal (ECF No. 10) based on two arguments: first, they adopted all of Norfolk Southern's preemption arguments and incorporated them by reference [ECF No. 10 at ¶¶ 1-2]; second, they argue that Columbus fails to sufficiently identify any property at issue that G&W controls or possesses [ECF No. 10 at ¶ 6].

For the reasons argued herein and above in section I of this response, federal preemption through the ICCTA does not apply in this case. Therefore, G&W's first argument fails.

As for the second argument, a proper reading of the Complaint defeats it. The Complaint expressly alleges that each of the G&W defendants "is in unlawful possession and/or control of real property subject to this action." [Complt., (ECF No. 1-2) at ¶¶ 7-9]. In the first paragraph of the Complaint (ECF No. 1-2), Columbus collectively refers to all of the Defendants, including Genesee & Wyoming Railroad Services, Inc., Columbus & Chattahoochee Railroad, Inc., and Georgia Southwestern Railroad, Inc., as "Railroad." Columbus used this word in its allegation: "Railroad gained possession of the Upper Railyard and the Lower Railyard pursuant to Railroad's voluntary agreement to accept the property pursuant to resolutions by City Council." [*Id.* at ¶ 84]. Finally, Columbus alleges that "Railroad" has "unlawful use and possession of the Upper Railyard and the Lower Railyard …." [*Id.* at ¶ 87].

Columbus defined the "Upper Railyard" in the Complaint as "the First Depot Lot, the Second Depot Lot, and the Third Depot Lot" and alleged that "Railroad" received limited title to the Upper Railyard. [*Id.* at ¶ 54]. The First, Second, and Third Depot Lots are each defined by

metes-and-bounds legal descriptions within the Complaint. [*Id.* at ¶¶ 18-26, 102, 33-38, 105, 44-48, 108]. Columbus also defined the Lower Railyard within the Complaint. [*Id.* at ¶¶ 56-72, 111]. Finally, each of the eleven counts in the Complaint is directed at "Railroad." [*Id.* at ¶¶ 88-125].

Therefore, the Complaint sufficiently alleges that G&W: occupies specific, real property located in Columbus, Georgia, obtained title to that property pursuant to city council resolutions, the same title has reverted to Columbus, and G&W is violating Columbus' rights to the property. This satisfies the federal requirements for pleading, and if G&W wishes to be dismissed from this action, they will need evidence to put before the Court showing they have no interest or possession in the real property at issue. Therefore, discovery is needed to resolve G&W's arguments for dismissal.

### III.    The Railroads Fail to Address Columbus' Voluntary Agreement Claims or Show a Federal Cause of Action Addressing Such Claims.

The Railroads fail to even attempt to tailor their arguments to the factual issues; specifically, the Railroads rely on *Union Pacific/CTA*, but do not address Columbus' allegations that a voluntary agreement exists. Instead, the Railroads argue blanket application of preemption, and their arguments rely on evidence outside of the pleadings to assert that preemption applies because the property at issue is "part of the national rail network." [Notice (ECF No. 1), at ¶ 2]; *see also* [Motion (ECF No. 9-1), at pp. 8-10]. Columbus denies that the property at issue is part of the national rail network, but this assertion is irrelevant to the issue of preemption because Columbus seeks only to enforce the Railroads' voluntary agreements concerning the property. If the Court disagrees and considers that evidence, then a ruling on the motions should be deferred until after Columbus has a reasonable opportunity to test that evidence through discovery.[9]

---

[9] Columbus concurrently files its opposition to the Railroads' motion to stay discovery (ECF No. 13).

Even if the real property at issue is part of the national rail system, preemption still does not apply to Columbus' claims because this case is based on voluntary agreements, which the Railroads failed to address in their motions. In fact, the Railroads' asserted arguments appear to be structured similarly to a brief opposing remand filed in another case by the same lead counsel here. *See Ill. Dept. of Transp. v. Union Pacific Railroad Co*., No. 3:24-CV-00614-NJR, 2024 WL 5007729 (S. D. Ill. Dec. 6, 2024) (the "*IDOT Case*") [ECF No. 25, *Union Pacific Railroad Co.'s Opposition to Plaintiff's Motion to Remand,* pp. 12-16]. In that case, the railroad's arguments for complete preemption of the plaintiff's condemnation action were rejected and the district court granted the motion for remand. *Id*., 2024 WL 5007729, at *3-7.

Part of the Railroads' burden to show preemption includes a showing that Columbus "'could have brought [its] claims under the relevant federal law ....'" *Schleider*, 121 F.4th at 160 *quoting Aetna Health*, 542 U.S. at 210. Here, the Railroads cite to 49 U.S.C. §§ 10903 and 11704 as the exclusive federal causes of action for Columbus to pursue. [ECF No. 9-1 at pp. 12-14]. The Railroads' specific arguments regarding this issue are nearly verbatim the same argument made through counsel in the *IDOT Case*. In a thorough and well-reasoned opinion that focuses on statutory text, the district court in that case rejected the exact same arguments the Railroads advance here. *Id*., 2024 WL 5007729, at *4-7. This Court should adopt that holding for this case; specifically, due to the express language of each section: § 10903 only permits "rail carriers" to apply for abandonment (Columbus is not a rail carrier), and § 11704 only creates a cause of action for violations of the ICCTA (Columbus has not alleged any violations of the ICCTA, but violations of independent legal duties arising from voluntary agreements). Thus, Columbus' could not have brought its claims under those sections of federal law, and the Railroads' arguments must fail. *Id.*

A majority of the Railroads' citations involve condemnation actions or adverse possession

18

claims. [ECF No. 9-1 at p. 8] But, as *Union Pacific/CTA* makes explicit, condemnation actions are preempted because they are regulatory in nature—the state using its power as sovereign to control land use—while voluntary agreements are not. *Id.*, 647 F.3d at 681-682. In fact, the voluntary agreement exception to ICCTA preemption has been applied specifically to property disputes in which the plaintiff seeks ejectment of a railroad company. *See Allied Indus. Dev. Corp. v. Ohio Cent. R.R.*, No. 4:09-CV-01904, 2010 WL 987156, at *2-4 (N.D. Ohio Mar. 15, 2010). There, plaintiffs purchased land previously sold by the defendant railroad which contained an active railroad line and, after the railroad company refused to vacate the land, plaintiffs sued in state court for trespass and ejectment. *Id.* The railroad company removed to federal court, alleging the state law claims were preempted. *Id.* The district court rejected the railroad company's claims of preemption, denied its motion to dismiss, and remanded to state court. As the court held,

> "[Plaintiff's] Ohio law claims cannot be said to 'regulate' the abandonment of rail lines. It is true that the upshot of [Plaintiffs'] claims (if successful) might affect certain of the defendants' rail lines. But the cause of that outcome is not Ohio's direct regulation of the defendants' rail lines; rather, the cause is the defendants' sale of the two parcels at issue…"

*Id.* at *3 *citing PCS Phosphate*, 559 F.3d at 218. The same logic applies here. Any impact on the Railroads' operations is not the result of state "regulations" of the rail lines, but rather the result of the Railroads' voluntary agreement to accept land subject to reversionary conditions, and their voluntary decision to trigger those conditions. *See American Airlines/Wolens*, 513 U.S. at 228-29. The ICCTA's preemption of state regulations is therefore inapplicable to Columbus' claims.

## -- CONCLUSION --

For the foregoing reasons, the Railroads' Motions to Dismiss should be denied and the case should be remanded to state court to proceed through discovery. In the event the Court is inclined

to rule in favor of the Railroads, Columbus asks that any dismissal be without prejudice to allow

for leave to amend the Complaint.

       This 18th day of November, 2025.

                                   PAGE, SCRANTOM, SPROUSE,
                                   TUCKER & FORD, P.C.

                           By: */s/ Jack P. Schley*
                                   James C. Clark, Jr.
                                   Ga. Bar No. 127145

1111 Bay Avenue, Third Floor   (Office)   Thomas F. Gristina
P.O. Box 1199                (Mailing)  Ga. Bar No. 452454
Columbus, Georgia 31902              Jack P. Schley
(706) 324-0251                     Ga. Bar No. 891829
jclark@pagescrantom.com
tgristina@pagescrantom.com
jschley@pagescrantom.com

                           By: */s/ Clifton C. Fay*
                                   Clifton C. Fay
                                   Ga. Bar No. 256460
P.O. Box 1340                       Lucy T. Sheftall
Columbus, Georgia 31902              Ga. Bar No. 639813
cfay@columbusga.org
lsheftall@columbusga.org

                           *Counsel for Plaintiff Consolidated Government of*
                           *Columbus, Georgia*

**CERTIFICATE OF SERVICE**

I do hereby certify that I am counsel for Plaintiff and that on this date I filed the foregoing document using the ECF system, which will automatically send notification of such filing to all counsel of record.

This 18th day of November, 2025.

/s/ Jack P. Schley
Counsel for Plaintiff