# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

CONSOLIDATED GOVERNMENT OF
COLUMBUS, GEORGIA,

        *Plaintiff,*

v.

NORFOLK SOUTHERN CORPORATION, *et al.*,

        *Defendants.*

Case No. 4:25-cv-312-CDL

## NORFOLK SOUTHERN DEFENDANTS' REPLY
## <u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>

J. STEVEN STEWART
Georgia Bar No. 681550
Hall, Bloch, Garland & Meyer, LLP
Post Office Box 5088
Macon, Georgia 31208-5088
(478) 745-1625
stevestewart@hbgm.com

TOBIAS S. LOSS-EATON
  *Lead Counsel*
(*pro hac vice*)
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
(202) 376-8427
tlosseaton@sidley.com

*Counsel for Defendants Norfolk Southern
Corporation, Norfolk Southern Railway
Company, Central of Georgia Railroad
Company, and The South Western Rail Road
Company*

# CONTENTS

Table of authorities .................................................................................................. ii

Introduction ............................................................................................................. 1

Argument ................................................................................................................. 1

I.     ICCTA completely preempts Columbus's attempt to seize an operating railyard. ............ 1

     A.     Columbus's claims are defensively preempted......................................................... 1

          1.     ICCTA preempts "voluntary agreements" that would unreasonably burden rail transportation. ................................................................ 2

          2.     Columbus's claims arise not from "voluntary agreements," but from preempted reversionary interests......................................... 5

     B.     ICCTA creates an exclusive federal cause of action for Columbus's claims. .................................................................................................... 7

II.     Columbus's claims should be dismissed......................................................... 10

Conclusion ............................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Industrial Development. Corp. v. Ohio Central Railroad*,
    No. 4:09-cv-1904, 2010 WL 987156 (N.D. Ohio Mar. 15, 2010)
    No. 4:09-cv-1904, 2010 WL 1524469 (N.D. Ohio Apr. 15, 2010) ........................................6

*Blanchard Sec. Co. v. Rahway Valley R.R.*,
    191 F. App'x 98 (3d Cir. 2006) ....................................................................................2, 3, 5

*BNSF Ry. Co. v. Hiett*,
    22 F.4th 1190 (10th Cir. 2022) ..............................................................................................2

*Borrero v. United Healthcare of N.Y., Inc.*,
    610 F.3d 1296 (11th Cir. 2010) ............................................................................................7

*Botsford v. Blue Cross & Blue Shield of Montana, Inc.*,
    314 F.3d 390 (9th Cir. 2002) ................................................................................................9

*Cedarapids, Inc. v. Chi., Cent. & Pac. R.R.*,
    265 F. Supp. 2d 1005 (N.D. Iowa 2003) ..............................................................................6

*CSX Transp. v. City of Sebree*,
    924 F.3d 276 (6th Cir. 2019) ................................................................................................3

*CSX Transp. v. Ga. Pub. Serv. Comm'n*,
    944 F. Supp. 1573 (N.D. Ga. 1996) ....................................................................................2

*Elam v. Kansas City S. Ry.*,
    635 F.3d 796 (5th Cir. 2011) ......................................................................................8, 9, 10

*Fox v. STB*,
    379 F. App'x 767 (10th Cir. 2010) ......................................................................................7

*Griffioen v. Cedar Rapids & Iowa City Ry.*,
    785 F. 3d 1182 (8th Cir. 2015) ............................................................................................9

*Groh v. Union Pac. R.R.*,
    No. 17-cv-741, 2017 WL 5985572 (W.D. Mo. Dec. 1, 2017) ..............................................8

*IDOT v. Union Pac. R.R.*,
    No. 3:24-cv-614, 2024 WL 5007729 (S.D. Ill. Dec. 6, 2024) ..........................................8, 9

*Jones Creek Invs., LLC v. Columbia Cnty.*,
    98 F. Supp. 3d 1279 (S.D. Ga. 2015) ..................................................................................2

ii

*Louisiana v. Illinois Central Railroad,*
    928 So. 2d 60 (La. App. 2005)...................................................................5, 6, 7, 10

*Nat'l Wildlife Fed'n v. ICC,*
    850 F.2d 694 (D.C. Cir. 1988) .................................................................................6

*New Orleans & Gulf Coast Ry. v. Barrois,*
    533 F.3d 321 (5th Cir. 2008) ...................................................................................2

*Norfolk S. Ry. v. Dille Rd. Recycling, LLC,*
    94 F.4th 517 (6th Cir. 2024) ....................................................................................3

*Oregon Coast Scenic R.R. v. Oregon Dep't of State Lands,*
    841 F.3d 1069 (9th Cir. 2016) .................................................................................7

*PCI Transp., Inc. v. Fort Worth & W. R.R.,*
    418 F.3d 535 (5th Cir. 2005) ...................................................................................7

*PCS Phosphate Co. v. Norfolk S. Corp.,*
    559 F.3d 212 (4th Cir. 2009) ...........................................................................2, 4, 5

*In re Port Everglades Launch Serv., Inc.,*
    No. 0:23-cv-62315, 2024 WL 6029536 (S.D. Fla. June 26, 2024)...........................7

*Sauer W., LLC v. Great W. Ry.,*
    No. 22-CA-638, 2023 WL 12061350 (Colo. App. May 11, 2023)........................4, 6

*Schleider v. GVDB Ops., LLC,*
    121 F.4th 149 (11th Cir. 2024) ................................................................................7

*Skidmore v. Norfolk S. Ry.,*
    1 F.4th 206 (4th Cir. 2021) ......................................................................................8

*Union Pac. R.R. v. ACTC,*
    No. 20-cv-7410-RS, 2021 WL 9898645 (N.D. Cal. Feb. 23, 2021)..........................4

*Union Pac. R.R. v. CTA,*
    647 F.3d 675 (7th Cir. 2011) ...................................................................................3

*Wilson v. Norfolk S. Ry.,*
    No. 1:08-cv-395, 2009 WL 189397 (W.D.N.C. Jan. 26, 2009)................................6

**Statutes**

28 U.S.C. § 1336(b) ...........................................................................................7, 10

49 U.S.C. § 10501(b)(2) ..........................................................................................6

**Administrative Authorities**

*Union Pac. R.R.—Pet. for Decl. Order*,
    No. FD 35960, 2016 WL 5904751 (S.T.B. Sept. 28, 2016) .......................................................2

*Wichita Terminal Ass'n—Pet. for Decl. Order*,
    No. FD 35765, 2015 WL 3875937 (S.T.B. June 23, 2015)................................................2, 3, 5

**Other Authorities**

Joint Suppl. Br. of STB & United States, *City of South Bend v. STB*,
    Nos. 08-1301, 08-1150 (D.C. Cir. filed Mar. 5, 2009), 2009 WL 632300 ..............................9

## INTRODUCTION

This case boils down to a simple question: Can a local government use state property law to seize land that an interstate railroad uses for its operations? The answer—always and everywhere—is no. And this is an especially easy case because Columbus is not merely trying to take some unused sliver of right-of-way; it is trying to oust Norfolk Southern from an entire active railyard. Federal law precludes that result.

Columbus's lead response—that preemption does not apply because this case involves voluntary agreements—is doubly mistaken. Even such agreements are preempted if their enforcement would unreasonably burden railroad operations, which is plainly true here. In any event, Columbus does not assert the kind of contractual claims that could avoid preemption. Likewise, Columbus asserts no "independent legal duty" that could defeat removal. And Columbus's attempt to evade ICCTA's exclusive scheme contradicts all relevant appellate authority. This Court has jurisdiction, and dismissal is proper.

## ARGUMENT

### I.    ICCTA completely preempts Columbus's attempt to seize an operating railyard.

Columbus agrees that complete preemption turns on two questions: (1) are the claims defensively preempted and, if so, (2) does ICCTA create an *exclusive* federal cause of action that "divest[s] state courts" of jurisdiction? *See* Opp. 6. The answer to both questions is yes.

#### A.    Columbus's claims are defensively preempted.

Abandoning its only prior argument against ICCTA preemption—that the Columbus Yard is supposedly beyond the STB's jurisdiction, *see* NS Mot. 11—Columbus pivots to a new theory, which it chides the railroads for "fail[ing] to address": That "ICCTA does not preempt voluntary agreements." Opp. 10, 18. But even if Columbus's claims arose from such agreements, they would be preempted. Regardless, this case is not about voluntary agreements in the first place.

## 1.     ICCTA preempts "voluntary agreements" that would unreasonably burden rail transportation.

Columbus overlooks that even "voluntary agreements between rail carriers and state or local entities are not enforceable" if "the railroad later demonstrates that enforcement of its agreement would unreasonably interfere with the railroad's operations." *Wichita Terminal Ass'n—Pet. for Decl. Order*, No. FD 35765, 2015 WL 3875937, at *7 (S.T.B. June 23, 2015); *see also PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 221 (4th Cir. 2009); *Union Pac. R.R.—Pet. for Decl. Order*, No. FD 35960, 2016 WL 5904751, at *6–7 (S.T.B. Sept. 28, 2016).[1]

For example, the Third Circuit held that ICCTA preempted state-law contractual and property claims because, if successful, they would obstruct railroad operations. *See Blanchard Sec. Co. v. Rahway Valley R.R.*, 191 F. App'x 98, 100 (3d Cir. 2006). In *Blanchard*, the railroad sold a parcel of land to a neighboring landowner and granted the landowner easements across its right-of-way to connect the properties. "[A]t the time of the transaction, [the railroad] intended to abandon the railroad right-of-way" altogether. *Id.* But plans changed—the railroad sold the right-of-way to the state, which contracted with another railroad "to restore freight service over that right-of-way." *Id.* at 99. When the landowner sued to enforce its voluntarily conferred easements, the courts applied ICCTA preemption because "enforcement of defendants' obligations unquestionably would interfere with interstate commerce." *Id.* "The private agreement between [the railroad] and [the landowner] does not reflect any determination that the obligations under the agreement would not unreasonably interfere with interstate rail operations at the present time." *Id.* at 100.

---

[1] Courts follow the STB's approach to ICCTA preemption because, "[a]s the agency authorized by Congress to administer the ICCTA, the STB is uniquely qualified to determine whether state law should be preempted." *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1194 (10th Cir. 2022) (brackets omitted); *accord New Orleans & Gulf Coast Ry. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008); *Jones Creek Invs., LLC v. Columbia Cnty.*, 98 F. Supp. 3d 1279, 1291 (S.D. Ga. 2015); *CSX Transp. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1584 (N.D. Ga. 1996).

Similarly, the Sixth Circuit held that ICCTA preempted an "Agreed Order" (essentially, a consent decree) governing how a railroad constructed its tracks at certain grade crossings.  *See CSX Transp. v. City of Sebree*, 924 F.3d 276, 286–87 (6th Cir. 2019).  Much like Columbus, the city there claimed that "a voluntary agreement can *never* be preempted." *Id.* at 287.  The court disagreed:  "The Agreed Order was entered into in 1979, over fifteen years before [ICCTA] was enacted," and the railroad "presented evidence that circumstances have materially changed since the agreement was voluntarily entered into by its predecessor." *Id.* at 286.  Enforcing the order would create "an unreasonable interference with rail transportation," so it was "void." *Id.*

And in *Wichita*, the STB held that a local government could not enforce an ordinance requiring a grade crossing over the railroad's line at a particular location. *See* 2015 WL 3875937, at *1.  Installing a crossing would "reduce capacity on the [railroad's tracks], thereby impeding rail operations that are part of the national rail network." *Id.* at *6.  It did not matter "whether the … Ordinance [was] a voluntary agreement":  "Even if the ordinance can be viewed as a voluntary agreement," such agreements "between rail carriers and state or local entities are not enforceable" if they "would unreasonably interfere with the railroad's operations." *Id.* at *7.

Under these cases, preemption turns on whether enforcing Columbus's "voluntary agreements" would unreasonably interfere with railroad operations.  It would.  As Norfolk Southern's motion showed—and Columbus nowhere disputes—attempts to take property that a railroad uses for its operations invariably constitute unreasonable interference.  NS Mot. 7–8.  Indeed, preemption applies even if the railroad is *not* using the property, but could do so in future. *See Norfolk S. Ry. v. Dille Rd. Recycling, LLC*, 94 F.4th 517, 530 (6th Cir. 2024); *Union Pac. R.R. v. CTA*, 647 F.3d 675, 681 (7th Cir. 2011).  In turn, there is no question that ejecting a railroad from an entire, *active* railyard would create unreasonable interference. *See Union Pac. R.R. v. ACTC*, No. 20-cv-

3

7410-RS, 2021 WL 9898645, at *3 (N.D. Cal. Feb. 23, 2021) (ICCTA preempted condemnation that would require the railroad to "remove track and portions of the rail yard used for spotting, switching, and storage of railcars"); *Sauer W., LLC v. Great W. Ry.*, No. 22-CA-638, 2023 WL 12061350, at *5 (Colo. App. May 11, 2023) (claims seeking to extinguish railroad easements across plaintiffs' property, if successful, "would have the effect of interfering with operation of the [rail line]").

Columbus says that, under *PCS Phosphate*, there can be no unreasonable interference if "the remedy sought … [is] being enforced through a voluntary agreement." Opp. 13; *see id.* at 15. But *PCS Phosphate* refused to adopt such a categorical rule, 559 F.3d at 221, and its facts are readily distinguishable. That case involved "a dispute between a rail carrier and a mine owner *over payment* for the relocation of the rail line that serves the mine." *Id.* at 214 (emphasis added). There was no suggestion that relocating the line would interfere with railroad operations. Rather, the railroad affirmed in the original agreements that the "relocation will not affect [its] ability … to comply with its legal obligation to serve any existing customer," and it later confirmed that the relocated route was "acceptable" operationally. *Id.* at 216, 222. The only question was who would pay for the work. *Id.* at 216. "In this instance," the court held, "Norfolk Southern cannot use the ICCTA" to avoid contractual liability. *See id.* at 221–22.

This case is worlds apart. Columbus is not trying to relocate Norfolk Southern's facilities to a different spot on the same property that will undisputedly create no operational problems; it is trying to shut down the Columbus Yard altogether. Likewise, this dispute is not about mere payment, but about whether the railroad can keep operating the railyard at all.

"Even if the [conveyances at issue] can be viewed as … voluntary agreement[s]," then, preemption applies because seizing the Columbus Yard would unreasonably interfere with railroad

4

operations. *See Wichita*, 2015 WL 3875937, at *7. Nothing in those conveyances "reflect[s] any determination" that surrendering the Yard "would not unreasonably interfere with interstate rail operations *at the present time*." *Blanchard*, 191 F. App'x at 100 (emphasis added).

### 2. Columbus's claims arise not from "voluntary agreements," but from preempted reversionary interests.

In any event, the complaint does not allege "voluntary agreements." Cases applying IC-CTA's voluntary-agreement exception have involved contractual claims. *E.g.*, *PCS Phosphate*, 559 F.3d at 216. That is not what Columbus asserts. Rather, it points to the kind of reversionary state-law interests that ICCTA routinely preempts.

All of Columbus's purported "agreements" are City Council resolutions or municipal instruments conveying property to a predecessor railroad subject to various conditions. *E.g.*, Compl. ¶ 19 (resolution authorizing the railroad "to occupy a space of ground for [its] Depot … provided the title shall revert to the City" under certain conditions); *see also id.* ¶¶ 21, 34, 45, 59, 66. These are not "[v]oluntary agreements between private parties," *PCS Phosphate*, 559 F.3d at 218; they are not contracts, and they do not contain any written promises or commitments by the railroads. Rather, Columbus's position is that each predecessor railroad must have agreed to the conditions because it "accept[ed] land *subject to reversionary conditions*." *See* Opp. 19 (emphasis added); Compl. ¶ 84. But Columbus cites no case treating such acceptance as a "voluntary agreement"— and it ignores the many cases holding this sort of reversionary interest preempted.

For example, in *Louisiana v. Illinois Central Railroad*, the railroad held property under a patent providing that, if it "cease[d] to use and occupy" the land, "the title thereto shall vest in" an adjacent state university. 928 So. 2d 60, 64 (La. App. 2005). The state sued, seeking sole ownership of the property. *See id.* at 66, 68. The court held these claims preempted. Though ICCTA

does not override all state-law property or "contractual dispute[s]," *id.* at 73, preemption still applied because of reversion's practical effects: "Regardless of whether [the railroad] has a valid ownership or servitude interest in the land, [the railroad] and its predecessors have continuously operated railroad tracks over the Property at issue for over one hundred years, and [the railroad] continues to do so presently. … *[T]hese facts are sufficient to trigger application of the ICCTA.*" *Id.* at 70 (emphasis added). So too here.[2]

    *Allied Industrial Development. Corp. v. Ohio Central Railroad* does not support a contrary conclusion. *Contra* Opp. 19. For one thing, that case did not involve reversionary interests, but property the railroad had sold outright. And the court rejected ICCTA preemption because it concluded (without citation) that a "law that merely has the *incidental effect* of rail line abandonment does not regulate rail transportation." *See* No. 4:09-cv-1904, 2010 WL 1524469, at *1 (N.D. Ohio Apr. 15, 2010) (cleaned up) (denying reconsideration); 2010 WL 987156, at *3–4 (N.D. Ohio Mar. 15, 2010) (granting remand). But abandonment of a rail line is not remotely "incidental"—it is a core aspect of the STB's exclusive authority. *See* NS Mot. 6–7; 49 U.S.C. § 10501(b)(2). And *Allied Industrial* did not consider any of the cases holding that state property law remains "subject to the [STB's] plenary authority to regulate railroad abandonments." *E.g.*, *Nat'l Wildlife Fed'n v. ICC*, 850 F.2d 694, 703–04 (D.C. Cir. 1988). *Allied Industrial*'s scant analysis thus lacks persuasive force. Regardless, *Allied Industrial* did not analyze whether the requested remedy would unreasonably burden rail transportation, *supra* § I.A.1, so it would not support Columbus anyway.

*    *    *

---

[2] *See also Wilson v. Norfolk S. Ry.*, No. 1:08-cv-395, 2009 WL 189397, at *4, *6 (W.D.N.C. Jan. 26, 2009) (ICCTA preempted the plaintiffs' asserted reversionary interests under the original "deeds conveying … right-of-way interests" to the railroad's predecessors); *Sauer W.*, 2023 WL 12061350, at *1, *4 (similar); *Cedarapids, Inc. v. Chi., Cent. & Pac. R.R.*, 265 F. Supp. 2d 1005, 1014–15 (N.D. Iowa 2003) (similar, under state reversionary statutes).

Finally, Columbus declares without explanation that the Columbus Yard is not "part of the national rail network." Opp. 17–18. "It is axiomatic," however, "that arguments not supported and properly developed are deemed waived." *In re Port Everglades Launch Serv., Inc.*, No. 0:23-cv-62315, 2024 WL 6029536, at *3 (S.D. Fla. June 26, 2024). Regardless, the Yard is undisputedly used for various operations related to moving freight. Compl. ¶¶ 31, 42, 52, 76. No more is required. *See* NS Mot. 6; *Oregon Coast Scenic R.R. v. Oregon Dep't of State Lands*, 841 F.3d 1069, 1075 (9th Cir. 2016); *Fox v. STB*, 379 F. App'x 767, 769 (10th Cir. 2010). Thus, defensive ICCTA preemption plainly applies here. However, if the Court is not yet prepared to reach that conclusion, it should refer the issue to the STB for the agency's views. *See* 28 U.S.C. § 1336(b).

**B.    ICCTA creates an exclusive federal cause of action for Columbus's claims.**

Step two of complete preemption asks whether "the federal statute at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Schleider v. GVDB Ops., LLC*, 121 F.4th 149, 161–62, 164 (11th Cir. 2024) (cleaned up); *see* NS Mot. 5, 13. On this issue, Columbus largely retreads the points above: It says these claims fall outside any federal cause of action, and depend on "independent legal duties," because they "aris[e] from voluntary agreements." *See* Opp. 7–8, 10, 18.

This argument fails for the reasons already explained: Columbus does not allege voluntary agreements, and even if it did, preemption would still apply. *Supra* § I.A. Thus, Columbus's claims are displaced by—not independent of—ICCTA's exclusive federal scheme. That is, complete preemption applies if "the legal duty implicated is dependent upon" the preempting statute, in whole or in part, *see Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304–05 (11th Cir. 2010), and a reversionary interest of the sort Columbus asserts "is dependent upon a determination regarding abandonment" by the STB, *Louisiana*, 928 So. 2d at 74; *cf. PCI Transp., Inc. v.*

*Fort Worth & W. R.R.*, 418 F.3d 535, 542–43 (5th Cir. 2005) (state contract action was completely preempted because "a portion of [the] claims [was] governed by the ICCTA").

Beyond that, Columbus takes the aggressive position that ICCTA *never* completely preempts claims seeking to seize railroad property because the statute supposedly creates no applicable cause of action. *See* Opp. 18 (citing *IDOT v. Union Pac. R.R.*, No. 3:24-cv-614, 2024 WL 5007729 (S.D. Ill. Dec. 6, 2024)). But again, courts across the country hold that such claims *are* completely preempted. *See* NS Mot. 8 (collecting cases); *Groh v. Union Pac. R.R.*, No. 17-cv-741, 2017 WL 5985572, at *4 (W.D. Mo. Dec. 1, 2017) (plaintiff's reversionary-interest claims fell "within the scope of the ICCTA's causes of action" because the STB has "exclusive authority" over abandonment). In claiming otherwise based on *IDOT*, Columbus is clinging to an outlier.

And *IDOT*'s reasoning is mistaken. ICCTA creates two relevant causes of action, both exclusive: One for violations of ICCTA under § 11704(b), and one for adverse abandonment under § 10903(d). *See* NS Mot. 12–14. As to the former, *IDOT* said that § 11704(b) cannot support complete preemption because it lacks any "thematic relationship" to a state-law property claim. *See* 2024 WL 5007729, at *5. But the Fourth and Fifth Circuits have rejected this argument, explaining that "complete preemption requires only that the preempting federal statute provide a *cause of action* that preempts state law, not that the statute provide *remedies* like those available under state law." *Skidmore v. Norfolk S. Ry.*, 1 F.4th 206, 216–17 (4th Cir. 2021) (quiet-title claims aimed at railroad land were completely preempted by § 11704(b)'s cause of action); *see also Elam v. Kansas City S. Ry.*, 635 F.3d 796, 812 (5th Cir. 2011) (tort claims against a railroad were properly removed and then dismissed, where § 11704(b) provided no remedy).

As to § 10903(d), *IDOT* declared (and Columbus agrees) that adverse abandonment—the cause of action allowing a non-railroad to secure an STB order removing railroad property from

ICCTA's preemptive scope—simply does not exist. *See* 2024 WL 5007729, at \*6; Opp. 18. In other words, Columbus is banking on this Court denying the existence of a power the Supreme Court first recognized almost eighty years ago, which the agency has exercised ever since. *See* NS Mot. 12–13. But in adopting that startling view, *IDOT* looked in the wrong place. The court emphasized that *subsection (a)* of § 10903 does not allow "third parties … to apply for abandonment." 2024 WL 5007729, at \*6. But as the STB has explained, the relevant language is in *subsection (d)*—and it has "not change[d]" since the Supreme Court construed it. *See* Joint Suppl. Br. of STB & United States, *City of South Bend v. STB*, Nos. 08-1301, 08-1150 (D.C. Cir. filed Mar. 5, 2009), 2009 WL 632300. If Congress meant to erase this "long established" power that "came from a Supreme Court interpretation," the statutory language or legislative history would give some hint—but none exists. *See id.* The Supreme Court's construction therefore controls.

*IDOT* also suggested that an administrative cause of action like adverse abandonment cannot support complete preemption because it cannot be pursued in federal court. *See* 2024 WL 5007729, at \*6. Columbus does not repeat that claim here, and rightly so. In similar cases, "even though the alternative federal remedies … were administrative," appellate courts have applied complete preemption "because the subject matter of the plaintiffs' claims fell within the scope of the respective statutes' substantive regulatory frameworks and substitute remedial schemes." *See Griffioen v. Cedar Rapids & Iowa City Ry.*, 785 F. 3d 1182, 1192 (8th Cir. 2015) (citing cases); *see also Botsford v. Blue Cross & Blue Shield of Montana, Inc.*, 314 F.3d 390, 398 (9th Cir. 2002) (recognizing complete preemption where a statute contains "a uniform administrative scheme").

In any event, adverse abandonment *can* be pursued in district court. ICCTA claims arise under federal law, so a district court can "exercise[] original (and hence removal) jurisdiction" over them. *Elam*, 635 F.3d at 808–10. If such a claim falls within the STB's exclusive authority,

as with adverse abandonment, the court should simply refer the issue to the STB (unless the claim is plainly "futile"). *See id.* at 812. And once the STB resolves the referred issue, the case returns to the district court to review the agency decision. 28 U.S.C. § 1336(b). So an adverse-abandonment proceeding can begin and end in federal district court.

In this way, the statutory scheme "ensure[s] both that the STB remains the primary policy maker on matters arising under the ICCTA, and also that matters falling squarely under the ICCTA do not languish in state courts for lack of federal removal jurisdiction." *Elam*, 635 F.3d at 810. It would make no sense to conclude that, where Congress has deemed a particular remedy *so exclusive* that only a particular federal agency can authorize it, such claims can proceed in state court. *See id.* ("the basic purpose of the ICCTA is to federalize the regulation of rail transportation, not deprive the federal courts of jurisdiction").

In short, adverse abandonment is the only way parties like Columbus can lawfully seize land that is used for rail operations. *Cf. Louisiana*, 928 So. 2d at 72 (treating the state's attempt "to effectively oust [the railroad] … as a 'forced' or 'adverse' abandonment claim"). Because Columbus's claims fall within this cause of action, complete preemption applies.

## II.    Columbus's claims should be dismissed.

As noted, an ICCTA claim falling within the STB's exclusive jurisdiction should generally be referred to the agency—unless the claim is "futile." *Elam*, 635 F.3d at 812. Columbus does not contend that it could state a claim under either of ICCTA's causes of action. Thus, it does not dispute that, if complete preemption applies, dismissal instead of referral is proper.

### CONCLUSION

The Court should hold that it has jurisdiction and dismiss Columbus's complaint for failure to state a claim. Alternatively, the Court should refer the defensive-preemption issue to the STB.

This 16th day of December, 2025.

Respectfully submitted,

*/s/ J. Steven Stewart*
J. STEVEN STEWART
Georgia Bar No. 681550
Hall, Bloch, Garland & Meyer, LLP
Post Office Box 5088
Macon, Georgia 31208-5088
(478) 745-1625
stevestewart@hbgm.com

TOBIAS S. LOSS-EATON
  *Lead Counsel*
(*pro hac vice*)
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
(202) 376-8427
tlosseaton@sidley.com

*Counsel for Defendants Norfolk Southern*
*Corporation, Norfolk Southern Railway*
*Company, Central of Georgia Railroad*
*Company, and The South Western Rail Road*
*Company*

11

## CERTIFICATE OF SERVICE

I hereby certify that *Norfolk Southern Defendants' Reply in Support of their Motion to Dismiss* has been served upon all counsel of record for the parties in this action via electronic mail addressed as follows:

James C. Clark, Jr.
Thomas F. Gristina
Jack P. Schley
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
P.O. Box 1199
Columbus, GA 31902
jclark@pagescrantom.com
tgristina@pagescrantom.com
jschley@pagescrantom.com

Clifton C. Fay
Lucy T. Sheftall
P.O. Box 1340
Columbus, GA 31902
cfay@columbusga.org
lsheftall@columbusga.org

*Counsel for Plaintiff Consolidated Government of Columbus, Georgia*

Eric L. Leach
Jeffrey C. Close
Milton, Leach, Whitman, D'Andrea, Eslinger, Collins & Close, P.A.
3127 Atlantic Blvd.
Jacksonville, FL 32207
eleach@miltonleach.com
jclose@miltonleach.com

*Counsel for Defendants Genesee & Wyoming Railroad Services, Inc., Columbus &
Chattahoochee Railroad, Inc., and Georgia Southwestern Railroad, Inc.*

This 16th day of December, 2025.

/s/ J. Steven Stewart
J. STEVEN STEWART