

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

TLOSSEATON@SIDLEY.COM
+1 202 736 8427

March 2, 2026

**By ECF**

The Honorable Clay D. Land
United States District Judge
Post Office Box 2017
Columbus, Georgia 31902

    Re:    *Consol. Gov't of Columbus v. Norfolk S. Corp.*, No. 4:25-cv-312

Dear Judge Land:

    On behalf of the Norfolk Southern defendants, I write to inform the Court of a new Surface Transportation Board decision—issued two days after the recent motion hearing—that further bolsters Norfolk Southern's preemption arguments.

    As it happens, the new STB decision is the culmination of the *Hartwell First United* litigation, a series of matters that included the trespass case the parties discussed at the end of the hearing, in which this Court had the opportunity to address another railroad's attempt to remove a case on complete ICCTA preemption grounds. As you know, a church filed suit in state court alleging that the railroad "trespassed on its property by attempting to reconstruct a rail track that [the railroad] previously maintained across the Church's property" and seeking an injunction. *See Hartwell First United Methodist Church v. Hartwell R.R.*, No. 16-cv-611, 2017 WL 11933985, at *1 (M.D. Ga. Mar. 03, 2017).[1] After the railroad removed the case, this Court granted the church's remand motion, holding that "federal law does not completely preempt a determination of the parties' relative state law property rights." *Id.* at *3. It appears, however, that the railroad in that case failed to recognize or make the arguments that Norfolk Southern raises here.

    After remand, the superior court granted the church a permanent injunction, ordering the railroad "to remove the rail lines." *See Hartwell R.R. v. Hartwell First United Methodist Church*, 370 Ga. App. 134, 140 (2023). But the Georgia Court of Appeals vacated the injunction, agreeing with the railroad that "the remedy ordered by the superior court is preempted by [ICCTA] because it forces abandonment of the track," and "the removal of railroad track falls under the exclusive jurisdiction of the STB." *Id.* at 143–44. That was true even though the Court of Appeals affirmed that

---

[1] The Westlaw entry for this Court's decision erroneously describes it as being issued by the superior court, which may explain why neither party was aware of it during briefing.

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

the church owned the underlying property, free and clear of any railroad interest. *See id.* at 141–43. Because the spur at issue remained within the STB's jurisdiction, "a further determination by the STB" would be "necessary before [the railroad] is required to permanently remove the track." *Id.* at 144.

The battle thus shifted to the STB. The church sought rulings that the railroad had "abandoned any residual rights" to the track and the agency "no longer has jurisdiction" over it. *See Great Walton R.R.—Pet. for Decl. Order.*, No. AB 1242 (Sub-1), 2026 WL 562267, at *4 (STB served Feb. 27, 2026). The STB held otherwise.

To start, the STB explained that, if the track "remains part of the interstate rail network, this would not only preempt the Georgia Superior Court's order enjoining [the railroad] from occupying the [track], but also its determination that 'any easement rights' [the railroad] has in the property had been abandoned under Georgia state law." *Id.* at *6. Although courts determine "who owns good title to property" under state law, ample precedent holds "that an easement used for rail transportation cannot be abandoned under state law so long as the property remains under the jurisdiction of the Board." *Id.* at *6 & nn.8–9 (cleaned up) (collecting cases). That is: "To the extent [that the railroad] … operated the [track] by lease *or some other contractual right, and to the extent that right expired, [the railroad] still may not be removed from the [track] while that track remains within the Board's jurisdiction.*" *Id.* at *6 n.10 (emphasis added) (citing precedent holding that "preemption prevents a party from evicting a rail carrier even though the carrier's lease had expired").

The agency then proceeded to find that the "track was not abandoned" and "remains in the interstate network." *Id.* at *10. As a result, "the state court's finding that [the railroad's] easement terminated under state law is preempted." *Id.*

Though the STB's decision does not directly address complete preemption, it shows—like the decision in *Mark Lange—Pet. for Decl. Order*, 2008 WL 219583 (S.T.B. served Jan. 28, 2008)—that the agency has exclusive jurisdiction over attempts to eject a railroad from property used for railroad operations, *regardless* of whether the railroad holds a valid state-law property right. Here, then, even if Norfolk Southern's state-law right to use the property underlying the Columbus Yard expired when the railroad crossed the river or stopped providing passenger service, it cannot be removed from this property without an abandonment finding by the agency—which Columbus can seek by asserting adverse abandonment.

Respectfully submitted,

Tobias S. Loss-Eaton

cc: Counsel of record via ECF

50500       SERVICE DATE – FEBRUARY 27, 2026
EB

SURFACE TRANSPORTATION BOARD

Docket No. AB 1242 (Sub-No. 1)

THE GREAT WALTON RAILROAD COMPANY—
PETITION FOR DECLARATORY ORDER

<u>Digest</u>:[1]  The Board determines that the ancillary track at issue in this proceeding was not abandoned by Great Walton Railroad Company and, as a result, remains part of the interstate rail system under the Board's jurisdiction.

Decided:  February 27, 2026

On September 26, 2024, Hartwell First United Methodist Church (Hartwell First) filed a request to remove this proceeding from abeyance and issue a decision determining that the Great Walton Railroad Company, Inc. (GWRC) abandoned an approximately 614-foot ancillary track segment known as the Runaround Track and, therefore, has no right to reconstruct the track. GWRC filed a response on October 30, 2024, requesting, among other things, that the Board find GWRC never intended to abandon any segment of the Runaround Track.  Hartwell First and GWRC submitted replies and rebuttals in support of their arguments.

For the reasons described below, the Board will remove this proceeding from abeyance and find that the Runaround Track was not abandoned and therefore remains under the Board's jurisdiction.

BACKGROUND

<u>2007-2008 License Agreements and Track Removal</u>.  The Runaround Track is ancillary track located adjacent to an approximately 0.25-mile segment of rail line (the Line)[2] owned by GWRC in Hartwell, Ga.  The Line is located at the tail-end of GWRC's rail line, known as the Hartwell Line, that runs from Bowersville, Ga., to Hartwell.  See <u>June 2020 Decision</u>, AB 1242 (Sub-No. 1), slip op. at 2.  Hartwell First owns property on both sides of the Line and Runaround

---

[1] The digest constitutes no part of the decision of the Board but has been prepared for the convenience of the reader.  It may not be cited to or relied upon as precedent.  See <u>Pol'y Statement on Plain Language Digs. in Decisions</u>, EP 696 (STB served Sept. 2, 2010).

[2] The Line does not include the Runaround Track.  See <u>Great Walton R.R.—Pet. for Declaratory Ord.</u> (<u>June 2020 Decision</u>), AB 1242 (Sub-No. 1), slip op. at 7 (STB served June 9, 2020), <u>corrected</u> (STB served June 23, 2020).

Track.[3]  The record reflects that a predecessor of GWRC constructed the Runaround Track in 1913 and that it was used by GWRC and its predecessor for approximately 90 years.  In 2007 and 2008, GWRC entered into three license agreements with Hartwell First allowing Hartwell First to install underground pipes and allowing pedestrian and vehicular traffic to cross over the Line and Runaround Track (collectively, the License Agreements).  (Hartwell First Req. 5, Sept. 26, 2024.)  In 2008, GWRC removed the rail from the Runaround Track, after which Hartwell First graded, landscaped, and installed sidewalk crossings.  (Id. at 8, 11.)

*2016 Adverse Abandonment Application*.  In 2016, Hartwell First filed an adverse abandonment application in Docket No. AB 1242, requesting that the Board authorize adverse abandonment and discontinuance of the Line.  In Hartwell First United Methodist Church—Adverse Abandonment & Discontinuance—Great Walton Railroad, in Hart County., Ga. (January 2018 Decision), AB 1242 (STB served Jan. 31, 2018), the Board denied Hartwell First's application for adverse abandonment and discontinuance of the Line.  However, the Board also required GWRC to file a status report every six months, describing its progress with respect to rehabilitation and utilization of the Line.  January 2018 Decision, AB 1242, slip op. at 5.

GWRC submitted four status reports in Docket No. AB 1242, which explained that GWRC had refurbished most of the Line at a cost of approximately $144,640, but that it was unable to complete restoration of the Runaround Track because of ongoing state litigation.  The Board terminated the reporting requirement by decision served July 20, 2022, and instead required that GWRC update the Board when there were significant developments in the state court litigation.  Hartwell First United Methodist Church—Adverse Aban. & Discontinuance—Great Walton R.R., in Hart Cnty., Ga., AB 1242 (STB served July 20, 2022).

*2019 Petition for Declaratory Order*.  On November 20, 2019, GWRC filed a petition for declaratory order in this docket, requesting that the Board "issue a declaratory ruling to clarify that GWRC's runaround track is a line of railroad subject to the Board's exclusive jurisdiction under 49 U.S.C. § 10501(b)."  (GWRC Pet. for Declaratory Ord. 1, Nov. 20, 2019.)  Specifically, GWRC requested (among other things) that the Board find that the January 2018 Decision denying Hartwell First's application for adverse abandonment entitled GWRC to reconstruct the Runaround Track.  (Id. at 7, 9.)  The Board denied GWRC's request in its June 2020 Decision.  There, the Board held that the January 2018 Decision only addressed the Line, as that was the only track that Hartwell First included as the target of its adverse abandonment application.  June 2020 Decision, AB 1242 (Sub-No. 1), slip op. at 6.

Additionally, the Board found that the Runaround Track was ancillary track under 49 U.S.C. § 10906 and never became a regulated rail line.  June 2020 Decision, AB 1242 (Sub-

---

[3]  GWRC asserts that it needs the Line to perform a runaround operation that would allow it to more safely and economically serve its sole customer on the Hartwell Line.  See June 2020 Decision, AB 1242 (Sub-No. 1), slip op. at 2.  To conduct this runaround operation, GWRC would use both the Line and the Runaround Track, which runs parallel to and connects to the Line on both ends.  Id.  GWRC would use the Runaround Track to reposition locomotives to the front of the train for the return trip from its customer's facility to Bowersville.  Id.

No. 1), slip op. at 10.  However, the Board deferred ruling on the question of whether the Runaround Track had been removed from the interstate rail system pursuant to the standard set forth in Pinelawn Cemetery—Petition for Declaratory Order (Pinelawn), FD 35468 (served Apr. 21, 2015) (considering whether the carrier had a "fixed and continuing intent" to use the ancillary track to "provide common carrier service to the public" to determine if the track "is still within the system").  The Board noted that there were two pending Georgia state court proceedings between the parties concerning ownership of the property underlying the Runaround Track and that if either proceeding was resolved in GWRC's favor, the abandonment question would be moot.  (Id. at 11-12.)  Accordingly, the Board instead placed this proceeding in abeyance pending the outcome of the state court proceedings.

*State Court Litigation on Trespass*.  The first state court litigation began in November 2016, when GWRC began reconstructing the Runaround Track and, in doing so, removed Hartwell First's landscaping and sidewalk.  In response, Hartwell First filed a trespass action against GWRC in the Superior Court of Hart County (the Superior Court).  The Superior Court issued a preliminary injunction that barred GWRC from continuing the repair work.

On September 26, 2024, Hartwell First filed the current request indicating that the trespass litigation had concluded.  (Hartwell First Req. 1, Sept. 26, 2024.)  Hartwell First states that the Superior Court issued a decision in October 2022 finding Hartwell First owned title to the property on which the Runaround Track is located, free and clear of all claims by GWRC.  (Id. at 5.)  Hartwell First attaches the Superior Court's decision to its request as Exhibit A.  The decision also found that GWRC's claim of a prescriptive easement to the Runaround Track property was moot, on the ground that GWRC "abandoned any easement rights" pursuant to Georgia state law.  (Id., Ex. A at 9-12.)  As the Superior Court explained, under Georgia law, a prescriptive easement "may be lost" by mere "nonuse," but that "removal of railroad tracks was abandonment of any easement rights, even when those rights were granted by written agreement."  (Id., Ex. A at 9, 10-11 (citing Ga. Code § 44-9-6 (2024)).  The court emphasized how GWRC had "removed the rails in 2008 . . . graded and planted the area, and . . . had no further use of the parcel until the attempted partial reconstruction in 2016" and, on that basis, that GWRC had abandoned any easement under state law.  (Id., Ex. A at 10.)  And, "while not necessary" to the Superior Court's finding, the court also found that GWRC evidenced an intent to abandon the Runaround Track by leasing the adjoining Line to a third-party for use as a public park, playground, and walking trail.  (Id.)  Based on these findings, the Superior Court granted Hartwell First a permanent injunction preventing further trespass by GWRC and ordering it to remove the partially reconstructed Runaround Track.  (Id., Ex. A at 13.)

Hartwell First states that GWRC then appealed to the Court of Appeals of Georgia,[4] which affirmed the lower court's ruling that Hartwell First had acquired title to the property

---

[4] GWRC appealed the Superior Court's finding that Hartwell First owned the property, the alternative finding that Hartwell First acquired title to the property by adverse possession, and the issuance of the permanent injunction directing GWRC to remove the Runaround Track. (Hartwell First Req., Ex. B at 13-14, Sept. 26, 2024.)  While the Court of Appeals indicated that GWRC did not "enumerate as error" the Superior Court's rulings that GWRC does not have a

underlying the Runaround Track by deed,[5] but vacated the permanent injunction. (Id., Ex. B at 14-23.) Hartwell First attaches the Georgia Court of Appeals' decision to its request at Exhibit B. In vacating the injunction, the Court of Appeals credited GWRC's argument that the Superior Court's order is preempted so long as the railroad track "falls under the exclusive jurisdiction over the STB." (Id., Ex. B at 19.) The Court of Appeals noted that ancillary track "is still under the STB's jurisdiction" even if "STB approval is not required for abandonment," and concluded that a determination by the Board as to whether the Runaround Track remains part of the interstate rail network may be necessary before GWRC is removed from the property. (Id. Ex. B at 23.) Hartwell First states that the Court of Appeals denied GWRC's motion for reconsideration and the Supreme Court of Georgia denied GWRC's petition for certiorari. (Id. at 6.)

*State Court Litigation on Eminent Domain*. On January 31, 2019, a second state court litigation also commenced, in which GWRC sought to acquire the property underlying the Runaround Track through eminent domain. Specifically, the state public service commission had denied GWRC's eminent domain petition for the property underlying the Runaround Track, and GWRC appealed that decision to the state courts. Following the June 2020 Decision, GWRC filed a status report stating that its appeals—first to the Superior Court of Fulton County and then to the Georgia Court of Appeals—had been denied and the Supreme Court of Georgia had denied a petition for certiorari. (GWRC Status Report 2, July 27, 2021, Hartwell First—Adverse Aban., AB 1242.) The litigation thus concluded with GWRC unable to acquire the Runaround Track property through eminent domain.

*Renewal of 2019 Petition for Declaratory Order*. With both state court proceedings now concluded, Hartwell First requests that the Board remove the 2019 petition for declaratory order from abeyance and find that: (1) GWRC abandoned any residual rights it had to the Runaround Track; (2) the agency no longer has jurisdiction over the Runaround Track; and (3) GWRC has no right, authority, or ability to construct new ancillary track on property which the Georgia state courts have determined belongs to Hartwell First. (Hartwell First Req. 2-3, Sept. 26, 2024.) Hartwell First argues in support that, under Pinelawn, GWRC's rights to the Runaround Track have been abandoned or terminated due to a lack of a fixed and continuing intent to make use of the Runaround Track, either in 2002, when rail use had already ended for several years, or in 2008, when GWRC voluntarily removed the Runaround Track from the property. (Id. at 10-13.) Hartwell First argues that by October 2016, when GWRC began constructing a new spur track, GWRC had already abandoned the Runaround Track and had allowed Hartwell First undisturbed and complete control, use, and maintenance of the property. (Id. at 12.)

---

real property interest in the Runaround Track property through adverse possession or prescriptive easement, GWRC did nonetheless argue that "removal and abandonment of railroad tracks falls under the exclusive jurisdiction of the STB." (Id., Ex. B at 14, 19.)

[5] Because the Court of Appeals affirmed the Superior Court's finding that the Church acquired fee simple title to the property by deed, it declined to address the Superior Court's alternative finding that the Church acquired the property by prescription. (Hartwell First Req., Ex. B at 19, Sept. 26, 2024.)

On October 30, 2024, GWRC filed a reply agreeing that the Board should remove the proceeding from abeyance, but requesting that the Board find that GWRC never intended to abandon the Runaround Track. (GWRC Reply 1, Oct. 30, 2024.) GWRC argues that it never had any intention of abandoning the Runaround Track on a permanent basis, but rather agreed to allow Hartwell First to temporarily remove the track pending its potential restoration in the future if necessary. (Id. at 1, 13-15.) In support of its assertion, GWRC relies on the language of the License Agreements and the Verified Statements of current and former GWRC employees. (Id. at 19-26.) GWRC also asserts that several of the state courts' findings interfere with GWRC's reconstruction of the Runaround Track, and therefore railroad operations, and so these findings must be preempted pursuant to 49 U.S.C. § 10501(b). (GWRC Reply 12-13, 35, Oct. 30, 2024.) Additionally, GWRC raises a number of arguments as to why the state courts reached the wrong results on the merits of the state property law issues. (Id. at 6-11, 27-33.)

On November 27, 2024, Hartwell First filed a "rebuttal" to GWRC's reply.[6] Hartwell First argues that by allowing it to landscape over and have exclusive use of the property for a period of eight years, GWRC did not intend the removal the tracks to be temporary. (Hartwell First Rebuttal 4-6, Nov. 27, 2024.) Hartwell First also argues that GWRC's adverse abandonment arguments are moot because the state court found that Hartwell First has fee title over the Runaround Track. (Id. at 10-11.) Hartwell First also disputes GWRC's assertions that the Runaround Track is necessary for safety or efficiency, noting that GWRC operated without the Runaround Track for years, that there has been no growth in traffic since then, and that GWRC has chosen not to use another available runaround track further up the Line. (Id. at 11-14.) Additionally, Hartwell First states that relitigating the state court decisions is beyond the Board's jurisdiction. (Id. at 3, 10.)

---

[6] Hartwell First requests that, because the Board has not established a procedural schedule, the Board accept its November 27, 2024 filing as a rebuttal and asserts that GWRC broadened the issues by arguing whether: (1) the state court decisions were correct in finding Hartwell First has fee title to the land underlying the Runaround Track, and (2) the Runaround Track is necessary to fulfill GWRC's common carrier obligations. (Hartwell First Rebuttal 3, 4, 8-10, 13, Dec. 17, 2024.). GWRC responded that Hartwell First's filing is an untimely reply to a reply and should not be accepted under 49 C.F.R. § 1104.13(a). (GWRC Surrebuttal 1, Dec. 17, 2024.) Although replies to replies often have been accepted in the past, the Board recently explained that its rule at 49 C.F.R. § 1104.13(c) prohibiting them will be more strictly enforced going forward to promote the orderly and efficient administration of cases. See Sunflower State Indus. Ry.—Pet. for Declaratory Ord. (Sunflower), FD 36714 (Sub-No. 1), slip op. at 2 n.3 (STB served Mar. 28, 2025). Among other things, the Board noted that information provided in a reply to a reply often could have been included in an initial filing, id., and indeed here, Hartwell First could have reasonably anticipated GWRC's arguments regarding the state court decisions and need for the Runaround Track at the time it filed its petition, and could have presented then its request for a procedural schedule that would have allowed for subsequent submission(s). Accordingly, Hartwell First's request for leave to file its rebuttal to GWRC's reply is denied, and neither Hartwell First's nor GWRC's surrebuttal will be accepted into the record. Nonetheless, even if Hartwell First's rebuttal were accepted into the record, it would not change the results reached in today's decision.

GWRC responded to Hartwell First's rebuttal on December 17, 2024, arguing, among other things, that the state courts' findings are preempted under 49 U.S.C. § 10501(b). (GWRC Surrebuttal 2, 5, Dec. 17, 2024.) GWRC argues that the fact that it has not provided rail service over the Runaround Track since 2008 is not determinative of an intent to abandon. (Id. at 8.) In support, it cites to the Board's decision in Norfolk Southern Railway—Adverse Abandonment—St. Joseph County, Ind., AB 290 (Sub-No. 286) (STB served Feb. 14, 2008), in which the Board denied an application for adverse abandonment even though the rail line at issue had not been used for years. (Id. at 8-10.)

DISCUSSION & CONCLUSIONS

Under 5 U.S.C. § 554(e) and 49 U.S.C. § 1321, the Board may issue a declaratory order to terminate a controversy or remove uncertainty. The Board has broad discretion in determining whether to issue a declaratory order. See Bos. & Me. Corp. v. Town of Ayer, 330 F.3d 12, 14 n.2 (1st Cir. 2003); Delegation of Auth.—Declaratory Ord. Procs., 5 I.C.C.2d 675, 675 (1989). Although the Board addressed most of the issues raised in GWRC's original petition for declaratory order in the June 2020 Decision, the Board deferred ruling on the status of the Runaround Track, as the then-pending state court proceedings might have ultimately rendered that issue moot. June 2020 Decision, AB 1242 (Sub-No. 1), slip op. at 11-12. But as the recent filings here make clear, those state court proceedings did not resolve the issue, and both parties now state that they wish this proceeding to be removed from abeyance. The Board will therefore remove the proceeding from abeyance to resolve the question of whether the Runaround Track has been abandoned.

*Georgia Superior Court's Abandonment Finding*. As a threshold matter, if the Board determines that the Runaround Track remains part of the interstate rail network, this would not only preempt the Georgia Superior Court's order enjoining GWRC from occupying the Runaround Track, but also its determination that "any easement rights" GWRC has in the property had been abandoned under Georgia state law.[7] Congress has made clear that the Board's jurisdiction over the abandonment of "spur, industrial, team, switching, or side tracks, or facilities" is exclusive and "preempt[s] the remedies" for abandonment under "State law." 49 U.S.C. § 10501(b).[8] And courts and the Board have repeatedly found that an easement used for

---

[7] Thus, the Georgia Superior Court may have misunderstood the Board's jurisdiction in concluding that, because "no STB authority was required before [GWRC] abandoned" the Runaround Track, it could proceed to a determination of whether property rights had been lost "under state law" without considering whether the Runaround Track remained part of the interstate rail network. (Hartwell First Req., Sept. 26, 2024, Ex. A at 11-12.) As the Georgia Court of Appeals correctly observed, despite a rail carrier not needing Board authority to construct, operate, or abandon ancillary track, such track is "nevertheless subject to the Board's jurisdiction." (Id., Ex. B at 22-23.)

[8] To be sure, it is "well settled that the interpretation of deeds and the determination of who owns good title to property are issues of state law" that are most appropriately decided by Courts. Cent. Kan. Ry.—Aban. Exemption—in Marion & McPherson Cntys., Kan., AB 406

rail transportation cannot be abandoned under state law so long as the property remains under the jurisdiction of the Board.[9]  This is true for both main line track and ancillary track:  "when sections 10501(b) and 10906 are read together, it is clear that Congress intended to occupy the field and preempt state jurisdiction over excepted track such as yard track, even though Congress allowed rail carriers to construct, operate, and remove such facilities without Board approval."  Joseph R. Fox—Pet. for Declaratory Ord., FD 35161, slip op. at 4-5 (STB served May 13, 2009) (citing ICCTA Conf. Rpt., H.R. Rep. No. 311, 104th Cong., 1st Sess. at 95 (1995)).[10]  So long as the Runaround Track has remained part of the interstate rail network, the Georgia Superior Court's determination that any easement held by GWRC to operate the Runaround Track was abandoned as a matter of state law is preempted.[11]

---

(Sub-No. 6X), slip op. at 2 (STB served May 8, 2001).  Contrary to GWRC's arguments, the Georgia Superior Court's determination that Hartwell First acquired title to the land underlying the Runaround Track by deed is not preempted nor will it otherwise be considered by the Board.

[9]  See, e.g., Grantwood Vill. v. Mo. Pac. R.R., 95 F.3d 654, 658, 659 (8th Cir. 1996) ("[F]ederal law preempts state law on the question of abandonment while the [agency] retains jurisdiction over the right-of-way"); Memmer v. United States, 50 F.4th 136, 145, 146-47 (Fed. Cir. 2022) (reasoning that the Board's "plenary authority to regulate abandonment" preempts abandonment under state law); Ala. R.R.—Aban. Exemption—in Escambia, Conecuh, & Monroe Cntys., Ala., AB 1324X, slip op. at 2 n.4 (STB served Oct. 24, 2022) (holding that a state court's "assertion of jurisdiction" to find that railroad abandoned a rail line right-of-way as a matter of "state law" is "flatly inconsistent with the Board's exclusive and plenary authority over the abandonment of rail line"); Jackson Cnty.—Acquis. & Operation Exemption—Union Pac. R.R., FD 35982, slip op. at 5, 7 (STB served July 30, 2019) (rejecting argument that rail line was "abandoned under Missouri law when the tracks and ties were removed" because it is "well settled" that the Board has exclusive jurisdiction over abandonment).

[10]  To the extent that the agency has suggested in interim decisions in certain past cases that a state court may find a rail easement terminated as a matter of state law notwithstanding the track's status as ancillary track under 49 U.S.C. § 10906, the Board clarifies that those decisions are inconsistent with 49 U.S.C. § 10502(b) and will not be followed.  See Baylands Dev., Inc.—Pet. for Declaratory Ord., FD 36660, slip op. at 4 (STB served Sept. 18, 2023); Atlas Land & Bldg. Corp. & Atlas Materials Recycling Corp.—Pet. for Declaratory Ord.—Indus. Spur Track in Pittsburgh, Pa., FD 36380, slip op. at 4 (STB served Aug. 17, 2020).

[11]  The Georgia Superior Court appeared to presume GWRC acquired an easement by prescription but did not resolve that question definitively in its decision.  To the extent GWRC and its predecessor-in-interest operated the Runaround Track by lease or some other contractual right, and to the extent that right expired, GWRC still may not be removed from the Runaround Track while that track remains within the Board's jurisdiction, as the Georgia Court of Appeals correctly held.  See Pinelawn, FD 35468, slip op. at 10-11 (finding that preemption prevents a party from evicting a rail carrier even though the carrier's lease had expired).

The Board now turns to the question of whether the Runaround Track has remained part of the interstate rail network under federal law.

*Status of the Runaround Track*.  In Pinelawn, the Board stated that in determining whether ancillary track under 49 U.S.C. § 10906 had been abandoned, the key consideration is whether the carrier had a "fixed and continuing intent to hold out to provide common carrier service to the public." Pinelawn, FD 35468, slip op. at 10 (asking whether the railroad's conduct demonstrates its belief that it "need[s] this property to continue their interstate rail operations"). As the Board has explained, it examines the totality of the circumstances on a case-by-case basis in making the determination about the carrier's intent.  NewVista Prop. Holdings, LLC—Pet. for Declaratory Ord., FD 36040, slip op. at 2 n.3 (STB served Mar. 17, 2017) (NewVista) (citing Pinelawn and Beaufort R.R.—Modified Rail Certificate, FD 34943, slip op. at 6-8 (STB served Mar. 19, 2008) (Beaufort R.R.)).  In particular, the Board looks for any physical act which shows a clear intention on the part of the railroad to remove the track from the national rail system and relinquish the property interest.  Beaufort R.R., FD 34943, slip op. at 6-7.  As for the removal of rails and ties, because those acts may be "consistent with either an abandonment or discontinuance," their probative value may be outweighed by other evidence indicating an intent not to abandon.  See, e.g., Birt v. STB, 90 F.3d 580, 586 (D.C. Cir. 1996); Norfolk & W. Ry.—Aban. Exemption—between Kokomo & Rochester in Howard, Miami, & Fulton Cntys., Ind., AB 290 (Sub-No. 168X), slip op. at 7 (STB served May 4, 2005) ("[R]emoval of the track materials is entitled to little weight where . . . other evidence shows a lack of intent to abandon."); see also Beaufort R.R., FD 34943, slip op. at 6 ("[T]emporary discontinuance of service . . . is not the same as abandonment.").

The Board finds that, on this record, the weight of evidence shows that GWRC possessed the requisite intent to retain the Runaround Track to provide common carrier service.  The Board finds especially persuasive text in the License Agreements preserving GWRC's right to use the land underlying the Runaround Track for railroad purposes and corroborating testimony from GWRC's employees.

*License Agreements*.  The License Agreements contain language that shows evidence of GWRC's intent to preserve the Line and Runaround Track for common carrier service.[12]  The terms of the original License Agreements that gave Hartwell First access over the Runaround Track indicate that GWRC wanted to preserve that track for future rail use.[13]  In the license dated December 20, 2007, Article 11 states:

---

[12]  The Superior Court did not consider the License Agreements when it concluded that GWRC intended to abandon any easement rights it might have in the Runaround Track as a matter of state law.  (Hartwell First Req., Ex. A at 9-12, Sept. 26, 2024.)

[13]  The first and second license agreements, dated December 20, 2007, and July 31, 2008, gave Hartwell First the right to use a private road crossing and two sidewalk crossings upon and across the Runaround Track, while the third license agreement, dated August 1, 2008, gave Hartwell First the right to maintain, operate, renew or construct a sewer line over the Runaround Track.  The Board has long made clear that third-party rights to install crossings and utilities

> [GWRC] reserves and accepts unto itself the paramount right to continue to occupy, possess, and use the area of the crossing for any and all railroad purposes. . . . . [Hartwell First] shall not at any time own or claim any right, title, or interest in or to [GWRC]'s property occupied by [Hartwell First]'s crossing, nor shall the exercise of this Agreement for any length of time give rise to any title to said property or any right or interest in [Hartwell First] other than the license created hereby."

(GWRC Reply, Ex. 7, May 30, 2017, Hartwell First—Adverse Aban., AB 1242.)  Additionally, Article 9 states:

> In order to contribute toward the safety of train and motor vehicle operations at said crossing, [Hartwell First] will at all times during the life of this agreement, keep the vegetation on its property cut in such manner and to such extent as is necessary to permit a person approaching the crossing from either direction to see approaching trains before such person reaches a position of danger on or near the crossing.  [Hartwell First] will also prevent the erection on its premises of any structures which would interfere with the view of approaching trains or other rail equipment operation on said track.  (Id.)

The provisions in Articles 9 and 11 are then repeated in the second license agreement dated July 31, 2008.  (GWRC Reply, Ex. 8, May 30, 2017, Hartwell First—Adverse Aban., AB 1242.)  In the third license agreement, dated August 1, 2008, Article 1 provides that Hartwell First's use of the land underlying the Runaround Track is "subject to any or all such rights" that GWRC "may have to use any road" that may "be located upon or which may traverse" the property.  (Id., Ex. 9.)  Article 5 required Hartwell First to construct any buildings, structures, or improvements on the property "in such manner as not to interfere" with GWRC's business.  (Id.)  And Article 14(a) states:

> In connection with the use of the Premises covered by this agreement, [Hartwell First] agrees to observe and be bound by the rules of [GWRC] with respect to standard clearances for all railroad tracks located on or adjacent to the Premises covered by this agreement.

The provision then goes on to provide width and height clearances from the centerline of the track.  (Id.)

Finally, in Article 14 of the first and second license agreement, GWRC reserved the right to terminate the license agreements, upon which the licensee (Hartwell First) was required to "restore" the property to the condition in which it existed prior to the construction of sidewalks.

---

(such as sewers) "over, under, or across a right-of-way" may "co-exist with active rail operations without necessarily interfering with the latter."  See, e.g., Jie Ao—Pet. for Declaratory Ord., FD 35539, slip op. at 7 (STB served June 6, 2012); E. Ala. Ry.—Pet. for Declaratory Ord., FD 35583, slip op. at 4-5 (STB served Mar. 9, 2012).

9

Docket No. AB 1242 (Sub-No. 1)

(GWRC Reply, Ex. 7 & 8, May 30, 2017, Hartwell First—Adverse Aban., AB 1242.)  Article 14 specifically states:

> Either party hereto may terminate this agreement at any time hereafter by serving upon the other thirty (30) days written notice of election to do so. . . At or before the expiration of the time limited by any notice to Licensee of Railroad's election to terminate this agreement, Licensee will discontinue use of said crossing, and will restore said right of way or property to the condition existing prior to the construction of said crossing, or, upon default thereof, Railroad may, in addition to any other legal remedy it may have, close said crossing and restore the condition of said right of way or property, at the sole cost and expense, of Licensee.

Similarly, Article 17(b) of the third license agreement states:

> Upon the termination of this agreement, for whatever cause, Licensee will vacate the Premises immediately, remove all improvements owned by or placed thereon by Licensee, and leave the Premises, including the subsurface, in as good order and condition as said Premises may have been prior to the use and occupation thereof by Licensee and free from holes, obstructions, debris, wastes, or contamination of any kind.

(Id., Ex. 9.)

These provisions are strong evidence of an intent by GWRC to preserve access to the Runaround Track should the need for service arise.

*Corroborating Testimony*.  The testimony of GWRC's employees—Bennie Ray Anderson, the President of the railroad during the relevant 2007 to 2008 time-period, and Charles Bishop, the former General Manager—corroborate GWRC's intent to preserve both the Line and the Runaround Track.  GWRC's witnesses claim that no one from GWRC ever expressed a desire to abandon the Line or Runaround Track.  (See GWRC Reply to Aban. Appl., V.S. Anderson 7-9, May 30, 2017, Hartwell First—Adverse Aban., AB 1242; GWRC Reply, V.S. Bishop 2, Oct. 30, 2024.)  According to the verified statement of Mr. Anderson, GWRC used the Runaround Track to execute the runaround maneuver for 70 years, up until 2007.  (GWRC Reply to Aban. Appl., V.S Anderson 3-4, May 30, 2017, Hartwell First—Adverse Aban., AB 1242.) This aligns with GWRC's assertions that the Line itself only had value if the Runaround Track itself were also preserved.  (GWRC Reply 13-14, Oct. 30, 2024 ("Mr. Anderson was aware that, without that segment of track that is at issue herein, the remainder of the runaround track is worthless in terms of efficient and safe railroad operations.") Indeed, without the Runaround Track, it seems that the Line itself would have limited utility.  See supra note 3 (describing how the Runaround Track and Line can be used to perform the runaround maneuver).  And while Hartwell First claims that a former owner of GWRC stated that GWRC would abandon the rail lines and donate the underlying property to the church, (see Hartwell First Rebuttal, V.S. Edmunds 3-4, 6, June 13, 2017, Hartwell First—Adverse Aban., AB 1242; id., V.S. Whittemore 2), there is no written evidence of any such promise and GWRC's witnesses claims that no such

10

promise was ever made, (see GWRC Reply to Aban. Appl., V.S. Anderson 7-9, May 30, 2017, Hartwell First—Adverse Aban., AB 1242; GWRC Reply, V.S. Bishop 2, Oct. 30, 2024).

As for the fact that GWRC removed the Runaround Track, Mr. Anderson provided a plausible explanation. He stated that when GWRC signed the license in 2008, the Runaround Track still had the original rails from 1919. (GWRC Reply to Aban. Appl., V.S Anderson 8, May 30, 2017, Hartwell First—Adverse Aban., AB 1242.) Accordingly, he stated that he knew that GWRC would need to replace the steel rails if it wanted to use the Runaround Track going forward. (Id.) He stated that he therefore allowed the rail to be removed, but only temporarily. (Id.) Anderson further explained that "had [he] been advised of Hartwell Firsts' actual plans and intent [to possess the property], [he] would not have granted crossing licenses to it and, [he] would never have agreed to the temporary removal of any portion of the steel rails from the runaround track or the mainline that GWRC was not using at that time." (Id.)

Hartwell First presented an alternative, plausible explanation for why the Runaround Track was removed: GWRC had promised to donate the property underlying the rail lines to Hartwell First and so removed the Runaround Track's rails for their scrap value. (See Hartwell First Rebuttal, V.S. Edmunds 5-6, June 13, 2017, Hartwell First—Adverse Aban., AB 1242; id., V.S. Whittemore 3-4.) However, this explanation is inconsistent not only with the testimony of GWRC's witnesses described above, but also with the language in the License Agreements reserving the future ability to restore the Runaround Track for the reactivation of rail service. Even if this language was "boilerplate" as Hartwell First contends,[14] that does not undermine its evidence of GWRC's intent to preserve the Runaround Track for railroad purposes. Indeed, in 2016, once GWRC realized that it would need the Runaround Track to improve service to the sole shipper, Quality Holdings, LLC (now Redline Plastics), GWRC invoked its right under the License Agreements to resume use of the Runaround Track property.[15] And, as Mr. Anderson asserted GWRC originally intended, GWRC began to replace the former Runaround Track rails with new rails. Based on the "totality of the circumstances," see NewVista, FD 36040, slip op. at 2 n.3, the Board finds that the record demonstrates that GWRC maintained a fixed and continuing intent to preserve the Runaround Track to fulfill its common carrier obligation, despite having removed the physical assets and having allowed Hartwell First to use the property.[16]

---

[14] Mr. Bishop, the purported draftsman of the license agreements, states that he "would not have wasted [his] time" drafting the provisions described above if GWRC had any intent to abandon the tracks. (GWRC Reply, V.S. Bishop 7, Oct. 30, 2024.)

[15] GWRC argues that there is a "recognized need to immediately restore the entire [R]unaround [T]rack," (GWRC Reply 12, Oct. 30, 2024). The Board makes no finding here regarding how necessary the Runaround Track is for GWRC to provide service. As the Board held when it denied Hartwell First's adverse abandonment application, the agency "typically is reluctant to substitute its operational judgment for the railroad's." January 2018 Decision, AB 1242, slip op. at 4 (citing Salt Lake City Corp.—Adverse Aban.—in Salt Lake City, Utah, AB 33 (Sub-No. 183), slip op. at 8 (STB served Mar. 8, 2002).

[16] GWRC argues that its lack of intent to abandon is also evidenced by its litigation efforts to re-establish service over the Line and Runaround Track since 2016. (GWRC Reply 14,

*The TORCH Lease*.  As noted above, the Georgia Superior Court in dicta stated that GWRC demonstrated an intent to abandon any easement it held under state law by leasing the Line (i.e., the main line to which the Runaround Track is ancillary) to Transformation Opportunities in Revitalizing Communities of Hartwell, Inc./TORCH of Hartwell, Inc. (TORCH) in 2015, which gave TORCH the ability to use the property on which the Line was located.  The Superior Court stated that "[s]ince the [Runaround Track] is appurtenant to the main line, the main line would be necessary for the utilization of the spur line, but the lease included language that is indicative of [GWRC's] intent to abandon its main line rail use . . . and to effectively abandon the property and potential easement rights of the [Runaround Track]."  (Hartwell First Req., Ex. A at 10, Sept. 26, 2024.)

GWRC's entry into the TORCH lease, however, is not persuasive evidence of an intent to abandon the Runaround Track, both because GWRC cannot abandon the Line without prior Board authorization and because there is other credible evidence concerning GWRC's intent with respect to both the Line and the Runaround Track.  As a matter of law, main line track cannot be abandoned solely via a contractual arrangement like a lease but rather requires prior authorization by the Board.  See 49 U.S.C. § 10903(a); see also, e.g., Grantwood Vill., 95 F.3d at 659 (explaining that a railroad may only abandon main line track after the agency has authorized the abandonment).  Thus, GWRC's common carrier obligation over the Line remains in effect so long as it continues to be the licensed operator and until it receives and consummates abandonment or discontinuance authority from the Board.  See, e.g., Middletown & N.J. R.R.—Lease & Operation Exemption—Norfolk S. Ry., FD 35412, slip op. at 4-5 (STB served Mar. 27, 2013).  Consistent with this obligation, GWRC made clear that neither GWRC nor TORCH "had any intent to impose any potential restriction on GWRC's use of its tracks to meet the needs of its customers."  (GWRC Reply 2, Oct. 2, 2017, Hartwell First—Adverse Aban., AB 1242; see also GWRC Reply to Aban. Appl., V.S. Anderson 10-11, May 30, 2017, Hartwell First—Adverse Aban., AB 1242).)  And, as the Board previously indicated, TORCH's occupancy is unlawful to the extent it limits GWRC's ability to provide rail service.  Hartwell First United Methodist Church—Adverse Aban. & Discontinuance—Great Walton R.R., in Hart Cnty., Ga., AB 1242, slip op. at 2-4 (STB served Aug. 31, 2017).  For this reason, the Board required GWRC to amend the TORCH lease to add specific provisions that would protect GWRC's right to restore service, or, alternatively, for TORCH to seek Board authority for the lease and thus become a railroad itself.  January 2018 Decision, AB 1242, slip op. at 8.[17]  Because GWRC could not have abandoned the Line through the lease with TORCH, and given its stated intentions to the contrary, in the Board's judgment GWRC's entry into the TORCH lease does not outweigh the evidence discussed above, supra at 8-11, that GWRC did not intend to abandon the Runaround Track.

---

Oct. 30, 2024.)  The Board disagrees that this is relevant.  Under Pinelawn, a carrier must have held a "fixed and *continuing* intent" to preserve the ancillary track for common carrier service.  GWRC's litigation efforts only began in 2016 and thus have no bearing on whether it held a continuing intent to preserve the Runaround Track from 2008 to 2016 (the period in question in this case).

[17]  GWRC filed its amended TORCH lease on March 19, 2018.

Docket No. AB 1242 (Sub-No. 1)

Accordingly, the Board will remove this proceeding from abeyance and find that it is unnecessary to establish a procedural schedule. The Board will decline to accept Hartwell First's rebuttal and GWRC's surrebuttal.[18] The record, as explained above, shows GWRC maintained a fixed and continuing intent to provide common carrier service to the public using the Runaround Track and Main Line. Therefore, under Pinelawn, the ancillary track was not abandoned, and the state court's finding that GRWC's easement terminated under state law is preempted. GWRC has not abandoned the Runaround Track and for that reason, the Runaround Track remains in the interstate network until abandoned by GWRC. Accordingly, the Board will grant GWRC's November 20, 2019 petition for declaratory order to the extent that it seeks a determination that the Runaround Track remains under the Board's jurisdiction.

It is ordered:

1. This proceeding is removed from abeyance.

2. The Board finds it unnecessary to establish a procedural schedule.

3. Hartwell First's rebuttal and GWRC's surrebuttal will not be accepted into the record.

4. The Board grants GWRC's petition for declaratory order to the extent it seeks a determination that GWRC has not abandoned the Runaround Track and, therefore, the Runaround Track remains in the interstate network, for the reasons discussed above.

5. This decision is effective on the date of service.

By the Board, Board Members Fuchs, Hedlund, and Schultz.

---

[18] As discussed above, the Board is now more strictly enforcing 49 C.F.R. § 1104.13(c) post Sunflower.

13