IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CONSOLIDATED GOVERNMENT OF     *
COLUMBUS, GEORGIA,

                               *

     Plaintiff,

                               *

vs.

                               *      CASE NO. 4:25-CV-312 (CDL)

NORFOLK SOUTHERN CORPORATION,
*et al.*,                           *

     Defendants.               *

O R D E R

The dispute giving rise to this action requires the Court to do more than simply decide whether the City of Columbus owns a railyard.  It raises an issue addressed by our founders almost a quarter of a millennium ago in the Constitution's Supremacy Clause. The Court must interpret that law to determine whether the City may sue Defendants in state court under state law or must assert any claims it may have exclusively under federal law.  To fully appreciate the context within which this issue must be analyzed, a brief civics refresher seems appropriate.[1]

The American colonists had experienced enough taxation without representation and were ready for a new day in which centralized government power would be dispersed.  They rebelled

---

[1] The Court notes that we celebrate the 250th anniversary of the signing of the Constitution's predecessor, the Declaration of Independence, this year.

against Great Britain, spelling out their reasons in 1776 in the Declaration of Independence.  Winning that war against all odds, they subsequently constructed a democratic republic with the adoption of the Constitution of the United States in 1787.  In that compact, the people divided power horizontally by creating three separate branches of the federal government that would apply checks and balances on each other.  The founders did not want to repose all governing authority in the centralized federal government, however, so they established a structure that maintained state and local government alongside the federal government.  Recognizing that this federalism model had the potential to create conflicts between the federal and state governments, the founding generation made clear that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  This Supremacy Clause assures that when an irreconcilable conflict exists between state and federal law and Congress has intended to supplant state law, federal law prevails.  This Clause, adopted almost 240 years ago, has application today.

The specific question presented here is whether the ICC Termination Act of 1995 completely preempts the state law claims that the Consolidated Government of Columbus ("Columbus") asserts in this action.  Finding that it does, this Court has exclusive

jurisdiction over this action.   And in its exercise of that jurisdiction, the Court must decline to remand this action to state court; instead, the action shall be dismissed because no federal claims are asserted in the complaint.   Accordingly, as explained in the remainder of this Order, Columbus's motion to remand (ECF No. 41) is denied, and Defendants' motions to dismiss (ECF Nos. 9 & 10) are granted.[2]

FACTUAL AND PROCEDURAL BACKGROUND

Columbus makes the following allegations in its Complaint, which the Court accepts as true for purposes of this order.   In the 1800s, several railroads requested land from the City of

---

[2] The Court acknowledges the seemingly *non sequitur* quality of this ruling—"your claim is federal but the federal court nevertheless dismisses it."  In an attempt to clear up this confusion, the Court makes the following observations.  The Court does not find that Columbus's claim is federal.  The Court finds instead that the exclusive claim that is available to Columbus, which has not yet been asserted by Columbus, is a federal claim that must be brought pursuant to federal law.  The state law claims asserted in Columbus's complaint cannot be asserted anywhere—in state or federal court—because they are completely preempted by federal law.  If there is any remedy for Columbus, it must be pursued under federal law.  Columbus has not yet asserted a federal claim because it believed it had the right to pursue its state law claims in state court.  Thus, its present complaint, which was removed to federal court from state court, contains no cause of action under federal law. Consequently, with no federal claim presently asserted in this action and with the state law claims being completely preempted, there is nothing left to consider, and the complaint must be dismissed. The Court hastens to add that this dismissal of Columbus's claims does not leave it without a potential remedy.  It simply must seek it under federal, not state, law. If such a federal claim is filed—either in this Court, another federal court with jurisdiction, or with the appropriate federal agency—it would be considered in due course under federal law. Hopefully, the above explanation demonstrates why complete federal preemption and dismissal of the present action are compatible, eliminating any accusations of illogical *non sequitur* reasoning by the Court.

Columbus to build railroad facilities.[3]  The City passed resolutions conveying land to the railroads.  For purposes of this order, the Court refers to all the property collectively as the "Railyard Lots."  Each resolution had slightly different terms, but they all provided that title to the Railyard Lots would revert to the City if (1) the railroads stopped using the land for passenger depots, (2) the railroad crossed the Chattahoochee River, and/or (3) the railroad charged to store goods on the property.  *See generally* Compl. ¶¶ 18-72, ECF No. 1-2.

At some unspecified time, the railroads crossed the river, began charging for storage of goods on the Railyard Lots, and stopped operating passenger depots.  *Id*. ¶¶ 27-29, 39-40, 49-50, 73-74.  Columbus contends that the Railyard Lots reverted to it when those events happened.  *Id*. ¶ 32.  Columbus alleges that Defendants now use the Railyard Lots for "temporary parking of empty train cars, temporary storage of train cars containing goods, and passage of through traffic which neither originates or terminates in Columbus."  *E.g.*, *id*. ¶ 31.  Columbus further alleges that each Defendant "is in unlawful possession and/or control of real property subject to this action."  *Id*. ¶¶ 3-10.  Based on these allegations, Columbus asserts state law claims against

---

[3] Four of the Defendants are successors to those railroads, and the other three Defendants allegedly lease property in Columbus from the successor railroads.

Defendants for continuing trespass, injunction, ejectment, and nuisance. It seeks to reclaim the property based on the reversion clauses in the various conveyances.

Columbus filed its state law action in the Superior Court of Muscogee County. Defendants removed the action to this Court, arguing that federal question jurisdiction exists because Columbus's state law claims are completely preempted by the ICC Termination Act of 1995, and the City's exclusive remedy to eject the railroads is to petition the Surface Transportation Board for adverse abandonment of the property. The railroads filed motions to dismiss, which are pending. Columbus argues that the ICCTA does not preempt its claims, that this Court lacks subject matter jurisdiction, and that this action should be remanded to the superior court.

DISCUSSION

The initial question raised by the parties' motions is whether Defendants were permitted to remove this action from the state court. A defendant may remove an action from state court to federal court only if the action is within the original jurisdiction of the federal court. 28 U.S.C. § 1441(a). Original jurisdiction exists when a civil action raises a federal question or where diversity of citizenship exists. *See* 28 U.S.C. §§ 1331, 1332. There is no diversity of citizenship in this action, so the basis for removal must be federal question jurisdiction. The

removing parties have the burden to establish subject matter jurisdiction, and all doubts about jurisdiction must be resolved in favor of remand to state court. *Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 155 (11th Cir. 2024).

Federal question jurisdiction only exists "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* at 155-56 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Even if a plaintiff only pleads state law claims, a federal question exists "if either: (1) the state-law claims raise substantial questions of federal law or (2) federal law completely preempts the state-law claims." *Id.* at 156. Here, Defendants contend that Columbus's state law claims are completely preempted by the ICC Termination Act of 1995, 49 U.S.C. § 10101, *et seq.*

## I.   The Complete Preemption Doctrine

Ordinarily, federal preemption "is a federal defense" to a lawsuit that "does not authorize removal to federal court." *Schleider*, 121 F.4th at 160 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Complete preemption, however, "is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Id.* (quoting *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1353 (11th Cir. 2003)). Complete preemption is "rare." *Id.* It "occurs when a federal statute both preempts state substantive

6

law and 'provides the exclusive cause of action for the claim asserted.'" *Id.* (quoting *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1047 (11th Cir. 2008)). Thus, complete preemption exists if the federal statute "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

To determine if a state law cause of action is completely preempted, the Court must look "beyond the complaint to determine if the suit is, in reality, purely a creature of federal law" such that federal question jurisdiction exists. *Id.* (internal quotation marks omitted) (quoting *Geddes*, 321 F.3d at 1353). "A federal cause of action alone" is not sufficient; for there to be exclusive federal court jurisdiction over a federal cause of action, "Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction." *Id.* (quoting *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990)).

The "scope of complete preemption turns primarily on the provision creating the federal cause of action—not on an express preemption provision." *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, No. 21-10410, 2023 WL 3454614, at *6 (11th Cir. May 15, 2023) (per curiam) (quoting *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1190 (8th Cir. 2015)). "It is the

federal cause of action that ultimately supplants the state-law cause of action and effectuates complete preemption." *Id.* (quoting *Griffioen*, 785 F.3d at 1190). A state law claim is only preempted if it "comes within the scope of" the exclusive federal cause of action, so the key question is "whether the plaintiff 'could have brought its claim under' the exclusive federal cause of action." *Id.* (alterations adopted) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 210 (2004)). The "fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987). A state-law claim is completely preempted only when Congress intended that the federal statute provides the exclusive cause of action for the asserted claim. If Congress did not provide a substitute cause of action, there is a presumption against complete preemption.

## II. Does the ICC Termination Act of 1995 Completely Preempt Columbus's State Law Claims?

The ICC Termination Act of 1995 ("ICCTA") was intended "to reform economic regulation of transportation." ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803.[4] Under the ICCTA, the Surface Transportation Board has "exclusive" jurisdiction over "transportation by rail carriers, and the remedies provided in

---

[4] Before 1995, the Interstate Commerce Commission regulated railroads. The ICC was created in 1887, mostly to regulate railroad rates. Congress deregulated most railroad activities in 1980.

this part with respect to . . . practices, routes, services, and facilities of such carriers" and "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities."  49 U.S.C. § 10501(b).  The ICCTA contains a complete preemption provision. That provision establishes that except as otherwise provided in the ICCTA, the remedies "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."  *Id.*

Columbus does not dispute that each Defendant in this action is a "rail carrier" that provides "common carrier railroad transportation for compensation."  *See id.* § 10102(5) (defining rail carrier).  Columbus also does not dispute that the Defendants use the Railyard Lots for rail transportation.  A "railroad" includes "a freight depot, yard, and ground[] used or necessary for transportation."  *Id.* § 10102(6)(C). "Transportation" includes not only locomotives and cars but also a "yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use."  *Id.* § 10102(9)(A). The questions for the Court, therefore, are (1) whether Columbus's present claims seek state law remedies with respect to regulation of rail transportation and (2) whether those claims come within

9

the scope of an exclusive federal cause of action created by the ICCTA. The Court evaluates each question in turn.

A.    Do Columbus's Present Claims Seek State Law Remedies with Respect to Rail Transportation?

Columbus asserts several state law claims that would eject Defendants from the Railyard Lots, including (1) claims for trespass and an injunction against continuing trespasses, (2) claims for ejectment from the Railyard Lots, and (3) claims for abatement of a nuisance caused by Defendants' operations on the Railyard Lots. Columbus contends that its claims are to resolve the parties' disputes about who holds title to the property and that the ICCTA does not preempt such claims. But several courts and the Surface Transportation Board have concluded that the ICCTA preempts any state court action that seeks to remove railroad tracks or facilities from property on which the railroad provides "transportation," *including* trespass actions where the railroad allegedly built facilities on someone else's property without permission.[5]

In one such case, the plaintiff asserted that a railroad built a fence and stored railroad equipment on his property without his permission. He brought trespass claims against the railroad in

---

[5] Because the Surface Transportation Board is "'uniquely qualified to determine whether state law should be preempted by the ICCTA,' courts have traditionally looked to STB decisions when analyzing a claim of preemption." *Fox v. Norfolk S. Corp.*, 802 S.E.2d 319, 333 (Ga. Ct. App. 2017) (quoting *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1130 (10th Cir. 2007)).

state court, seeking immediate possession of the property and removal of the railroad's fence and equipment.  The state court required the plaintiff to petition the Surface Transportation Board for a ruling.  *Mark Lange*, STB Fin. 35037, 2008 WL 219583, at *1 (S.T.B. Jan. 24, 2008).  The Surface Transportation Board found that the railroad's use of the property fell within the ICCTA's definition of rail transportation, that the state law trespass claim would effectively regulate rail transportation, and that the ICCTA thus preempted the plaintiff's state law trespass claims to the extent that the plaintiff sought to eject the railroad from the property.  *Id.* at *3.  Any state law claims for inverse condemnation, though, were not preempted.  *Id.* at *4; *see also Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1069-70 (11th Cir. 2010) (citing *Mark Lange* with approval and finding that a nuisance action based on a railroad's construction of side track next to the plaintiffs' property was preempted because the effect of the action—which sought abatement of the nuisance caused by the side track—would be to regulate rail transportation).

In another analogous case, the Georgia Court of Appeals found that although the superior court correctly concluded that a church owned property upon which a railroad built its spur track, the superior court erred in granting an injunction that required the railroad to remove its tracks.  *Hartwell R.R. Co. v. Hartwell First United Methodist Church, Inc.*, 894 S.E.2d 481, 490 (Ga. Ct. App.

2023). The Georgia Court of Appeals reasoned that state law claims which interfere with rail operations (including spur track operations) are preempted by the ICCTA and that the Surface Transportation Board had exclusive jurisdiction to determine whether the spur track was part of the interstate rail system. *Id.* Thus, the superior court could not order the railroad to remove the track, even if the track was on land that was owned by someone other than the railroad. *Id.; cf. Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 213 (4th Cir. 2021) (finding that the plaintiff's quiet title action was preempted because his attempt to exclude the railroad from its right-of-way over the plaintiff's property constituted an effort "to govern or manage rail transportation").[6]

---

[6] To the layperson (and even a less than fully informed federal judge), this just doesn't seem "right." A railroad undisputably runs its track on your property, and you cannot bring a state law claim against the railroad in your home county for trespass under law that has arguably been recognized since James Oglethorpe brought the English common law to our shores. The Constitution's Supremacy Clause complicates this seemingly straightforward issue, as this Court learned during the litigation in *Hartwell Railroad.* That case was initially removed to this Court. Upon removal, the Court considered whether the ICCTA completely preempted the church's state law trespass action. Order on Mot. to Remand, *Hartwell First United Methodist Church, Inc. v. Hartwell R.R. Co.*, No. 3:16-CV-169, 2017 WL 11933985 (Mar. 3, 2017). Believing that the matter should be litigated on its home turf in state court, this Court concluded, rather boldly, that federal law did not completely preempt a determination of the parties' relative state law property rights. The Court thus remanded the action to the superior court for such a determination. *Id.* at *3. As the case proceeded through the state courts, the Georgia Court of Appeals determined that the ICCTA preempted the church's state law trespass claim. *Hartwell R.R. Co.*, 894 S.E.2d at 490. Subsequently, when the matter was pursued with the Surface Transportation Board, it concluded that the spur track at issue in *Hartwell First UMC* remained part of interstate rail system and was

Columbus argues that because Defendants' predecessors received the Railyard Lots pursuant to resolutions passed by the Columbus Council under terms which provided that the property would revert to Columbus if the railroads took certain actions, the trespass claim is an action to enforce a voluntary agreement between Columbus and the railroads—not an attempt to regulate rail transportation. In support of this argument, Columbus relies primarily on *PCS Phosphate Co. v. Norfolk Southern Corp.*, 559 F.3d 212 (4th Cir. 2009). That case stands for the simple proposition that if a railroad promises to pay for relocation of a service track upon occurrence of certain conditions, then the railroad can't hide behind the ICCTA in a breach of contract action to avoid honoring that promise. *Id.* at 220.[7] *PCS Phosphate* does not address

---

thus subject to the Surface Transportation Board's exclusive jurisdiction. *The Great Walton R.R. Co.*, No. AB 1242 (Sub-No. 1), 2026 WL 562267, at *10 (S.T.B. Feb. 27, 2026). While this Court's ruling in *Hartwell First UMC* was never formally reversed, its rationale certainly was called into question, a development with which this Court, upon further reflection, concurs.

[7] In *PCS Phosphate*, a railroad obtained easements to build a rail line to service the plaintiff's phosphate mine as its sole rail carrier. The railroad agreed that if, after at least ten years, the plaintiff determined that the rail line interfered with its operations, then the railroad would pay to move the track somewhere else. *Id.* at 215. The railroad agreed that such a move would not affect its ability to comply with its legal obligation to serve any of its existing customers on its line. After the railroad received the benefits of operating on the original service line for more than forty years, the plaintiff informed the railroad that the track needed to be moved. The railroad refused to pay for the relocation and informed the plaintiff that it would seek permission from the Surface Transportation Board to abandon the line altogether. *Id.* at 216. Because continued mining operations were not feasible without rail service, the plaintiff relocated the service line at its own expense and sued the railroad for breach of contract. *Id.* The Surface Transportation Board suggested that a court needed to resolve

13

the types of claims Columbus raises in this action—trespass and nuisance claims that would, if successful, have the effect of regulating rail transportation because Defendants would no longer be permitted to operate on the Railyard Lots. Here, it is not the legal theory ("enforcement of voluntary agreements") upon which Columbus relies that is dispositive; it is the fact that if Columbus were to succeed on its state law claims, it would be able to cause a cessation of rail transportation. Cessation of such operations is the *ultimate regulation* of rail transportation. The Court finds unpersuasive Columbus's reliance upon *PCS Phosphate* to authorize it to regulate rail transportation.

The Court also finds Columbus's reliance upon *Union Pac. R.R. Co. v. Chicago Transit Auth.*, 647 F.3d 675 (7th Cir. 2011) misplaced. The holding of that case actually supports Defendants' position. The Seventh Circuit concluded that the transit authority's condemnation action was an impermissible regulation with respect to rail transportation and thus preempted under the ICCTA. The Seventh Circuit reasoned that the condemnation action would have "the effect of preventing and unreasonably interfering with railroad transportation" since the railroad would lose certain property rights, including the right to reclaim the

---

the contractual dispute, *id.* at 220, and the Fourth Circuit rejected the railroad's preemption argument because enforcing the contractual agreement under the circumstances presented did not amount to regulation of rail transportation. *Id.* at 222.

property for railroad use. *Id.* at 682-83. While dicta in that decision could be construed in a manner that muddies the water here, the Court is not persuaded by dicta from another circuit.

In summary, Columbus is pursuing state law claims that would eject Defendants, who are rail carriers, from the Railyard Lots where they engage in rail transportation. The Court is persuaded by the rationale of the Surface Transportation Board in *Mark Lange* and the Georgia Court of Appeals in *Hartwell Railroad*, which found that such state law remedies are preempted by the ICCTA. Following that rationale, the Court finds that Columbus's state law claims here are remedies with respect to regulation of rail transportation, which are preempted by the ICCTA. The first step of the complete preemption test is met.

B.    Does the ICCTA Create an Exclusive Federal Cause of Action that Encompasses Columbus's State Law Claims?

Columbus argues that even if its state law claims are remedies with respect to regulation of rail transportation, the claims are not *completely* preempted—and the Court thus lacks subject matter jurisdiction—because the ICCTA does not create an exclusive federal cause of action that encompasses Columbus's state law claims. As discussed above, complete preemption only exists if a plaintiff could have brought its claim under an exclusive federal cause of action created by the ICCTA. The Eleventh Circuit has not squarely addressed whether the ICCTA creates a "substitute"

15

federal cause of action that would encompass Columbus's claims seeking to eject Defendants from the Railyard Lots.  Thus, this Court writes on a relatively blank slate.  In doing so, the Court acknowledges that this issue presents a close call.

Defendants contend that the ICCTA creates an exclusive federal cause of action to eject a rail carrier from property on which it has conducted rail transportation: a claim for adverse abandonment under 49 U.S.C. § 10903 and the applicable regulations.[8]  A claim for adverse abandonment may be brought directly before the Surface Transportation Board.[9]  Columbus questions whether an interested party that is not a "rail carrier" is authorized to bring an adverse abandonment petition, but Columbus did not clearly point to authority holding that abandonment claims may *only* be brought by a rail carrier.  Columbus does not seriously dispute that the Surface Transportation Board routinely entertains adverse abandonment petitions from entities who are not rail carriers.  And Defendants acknowledge that such claims may be considered by the STB.  Therefore, the Court finds

---

[8] Defendants also argue that Columbus has a potential remedy under 49 U.S.C. § 11704(b), which provides a federal cause of action "for damages sustained by a person as a result of" a rail carrier's violation of the ICCTA.  But Columbus does not assert that it suffered damages as a result of a *violation* of the ICCTA, so that provision does not apply.

[9] Defendants suggest that such claims may also be asserted in a district court action and referred to the Surface Transportation Board under the primary jurisdiction doctrine, but the authority Defendants cited in support of this assertion does not clearly address whether an adverse abandonment claim under 49 U.S.C. § 10903 may be asserted in a district court.

16

that an adverse abandonment claim may be brought before the STB by a property owner who seeks ejectment of a rail carrier from its property.  The Court further finds that this administrative action under the ICCTA is a "federal cause of action" for purposes of the complete preemption analysis.  By providing such a remedy, Congress has clearly indicated its intention that such an action shall be the exclusive cause of action for seeking to eject a rail carrier from a person's property under the circumstances presented here.  For these reasons, the Court is satisfied that there is an exclusive federal remedy that encompasses Columbus's claims.  Accordingly, Columbus's state law claims are completely preempted by the ICCTA.[10]

C.    Does Columbus State a Claim Under the ICCTA or Any Non-Preempted Claim?

Having concluded that the ICCTA provides the exclusive federal remedy for Columbus's claims which seek to remove Defendants from the Railyard Lots, the next question is whether the present complaint states a claim under the ICCTA.  It does not.  Columbus did not point to any allegations in its present complaint that would support an adverse abandonment claim. Columbus also did not clearly allege any causes of action that are

---

[10] The Court observes that if the Surface Transportation Board concludes that the Defendants have not abandoned the property and shall not be ejected from it, Columbus may pursue a remedy for compensation under the Takings Clause of the U.S. Constitution. *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation.").

not preempted by the ICCTA. *Cf. Mark Lange*, STB Fin. 35037, 2008 WL 219583, at *4 (S.T.B. Jan. 24, 2008) (noting that although the plaintiff's state law trespass claims for ejectment were preempted by the ICCTA, any state law claims for inverse condemnation were not preempted). Accordingly, the present complaint is dismissed, without prejudice to Columbus being able to assert an adverse abandonment claim before the Surface Transportation Board and/or a non-preempted state law claim.

                              CONCLUSION

On a superficial level, the outcome described in today's order may not seem "fair." The railroads agreed long ago that if certain conditions were met, the property granted to them by Columbus for specified purposes would revert to the City so that Columbus could then determine for what public good the property should be used. But upon deeper reflection, it must be recognized that the people of the United States, through their elected representatives in Congress, have decided that the uniform regulation of railroads is sufficiently important that the displacement of rail operations should be handled exclusively through federal, not state, channels. Thus, Columbus must assert its grievances in the proper federal forum and not through a state law civil action. The Constitution's Supremacy Clause and the ICC Termination Act of 1995 require no less.

                                 18

For the reasons set forth above, the Court grants Defendants' motions to dismiss (ECF Nos. 9 & 10) and denies Columbus's motion to remand (ECF No. 41).

IT IS SO ORDERED, this 25th day of March, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA